Scott LARKIN, Appellant,

v.

Bob BIERMAN d/b/a Bierman's Repair Service and Bob "Butch" Bierman, Jr., Appellees.

No. 56130.

Supreme Court of Iowa.

Dec. 19, 1973.

David P. Miller, Davenport, for appellant.

Wayne A. Eckhardt of Eckhardt, Goedken & Hintermeister, Muscatine, for appellees.

Submitted to MOORE, C. J., and MASON, RAWLINGS, REES and McCORMICK, JJ.

McCORMICK, Justice.

Plaintiff Scott Larkin was injured when defendant Bob "Butch" Bierman, Jr. dropped a hippopotamus cage on his feet. His negligence suit against Butch and his employer, defendant Bob Bierman, ended in a directed verdict for defendants. Trial court held plaintiff's evidence was insufficient for the jury on the issue of negligence. We reverse and remand.

I. Rules governing our review in this case are well settled. In considering the propriety of a directed verdict we examine the evidence in its light most favorable to the party against whom it was directed. The movant is considered to have admitted the truth of all evidence offered by his adversary and every favorable inference which may fairly and reasonably be deduced from it. Schneberger v. Glenn, 176 N.W.2d 782, 784 (Iowa 1970). The question of negligence, like the question of proximate cause, is generally for the jury and may be decided as a matter of law only in exceptional cases.

Negligence may be established by circumstantial evidence. Such evidence must be sufficient to make the theory of causation reasonably probable, not merely possible, and more probable than any other theory based on the evidence, but generally it is for the trier of fact to say whether circumstantial evidence meets this test.

The only evidence received at trial on the issue of negligence was plaintiff's testimony. It is recited here in its light most favorable to plaintiff. He is a professional animal trainer who in April 1970 needed a

cage for a newly-acquired hippopotamus. Charles Towne, then director of the Muscatine Zoo, owned a suitable cage. It was located on the premises of Bierman's Repair Service. That business was owned by Bob Bierman, and Butch was his employee. Towne agreed with plaintiff that if plaintiff would pay Towne's bill with Bierman's for welding repairs he could have temporary use of the cage.

Pursuant to this agreement plaintiff drove his flatbed truck to the Bierman premises with Towne in the late afternoon of April 16, 1970. He parked the truck in the driveway. Towne talked to Butch after which Butch and Towne got on a tractor equipped with a hydraulic end loader. The loader operated jerkily as if low on hydraulic fluid. Butch drove the tractor to the rear of the premises. The cage was sitting there among weeds and junk cars. Its sides were five or six feet square, made with crossed horizontal and vertical rolled steel bars. It had a roof, floor and door, was mounted on casters, and weighed about 1500 pounds.

Butch called plaintiff to assist in pushing junk car frames out of the way. A long chain with hooks at each end was secured to and hung over the bucket on the loader, and the hooks were affixed to the cage. Towne got on the cage. Butch lifted it with the loader and carried it to the driveway near plaintiff's truck. He believed it would ride better on the truck if laid on its side because of the casters. Towne got off the cage and helped steady it on one side, and plaintiff steadied it on the other as it was lowered to the ground. When it reached the ground Butch directed the chain be unhooked from the cage. Towne unhooked the chain on both sides. Butch then simultaneously lifted the bucket off the cage and started backing. As he did so one hook of the chain caught the cage and flipped it over onto plaintiff's feet causing the injuries for which he sought damages.

■ Among plaintiff's 15 specifications of negligence is an allegation that Butch failed to maintain a proper lookout for plaintiff during the delivery operation. Of course Butch had a duty to exercise ordinary care in maintaining a lookout for plaintiff during his operation of the tractor. A breach of that duty would constitute negligence. This concept was discussed in analogous circumstances in Bradt v. Grell Construction, Inc., 161 N.W.2d 336, 341–342 (Iowa 1968). There the court defined this common law duty:

"Proper lookout means more than merely to look and see an object. It implies being watchful of the movements of the driver's vehicle in relation to other things seen and which could be discerned or seen in the exercise of ordinary care. It involves care, watchfulness and attention of the ordinarily prudent person under the circumstances. [citations]

"The word lookout as used in connection with operation of a motor vehicle has no technical legal significance. Its meaning depends on the context."

■ This means Butch was obliged to use ordinary care to see plaintiff was safe from possible injury from the contemplated operation of his tractor. *Id.* Considering the evidence under the principles applicable to our review we believe there was substantial evidence to support submission of this specification of negligence to the jury. Evidence as to the other specifications was insufficient.

Butch knew plaintiff was alongside the cage. He must have known of the jerky operation of the loader. He knew the chain was draped over the bucket and the hooks would dangle loosely as he lifted the bucket from the cage. He knew the heavy cage rested on unlocked swivel casters. He also knew if a hook caught on the top or one of the horizontal bars of the cage it could tip it over. The jury could find that the danger of the cage being tipped onto plaintiff as Butch lifted the bucket and backed the tractor was reasonably foreseeable by him and that he failed to maintain a proper lookout to ensure plaintiff was in a

place of safety before commencing such operation.

Trial court erred in sustaining defendants' motion for directed verdict.

II. It is unfortunate in this case that the trial court did not reserve ruling on the motion for directed verdict and let the case proceed in regular course through jury verdict. If the verdict was for defendants the motion would be moot. If the verdict was for plaintiff and the court then sustained the motion, reversal of the case on appeal would not require retrial.

Although it is procedurally proper to sustain a motion for directed verdict when made, we believe the preferred procedure in close cases is to delay sustaining the motion until after verdict of the jury in order to avoid retrial if there is a reversal. This case must be reversed and remanded for new trial.

Reversed and remanded.