**James R. TRUSHCHEFF and Jeanne Trushcheff, Plaintiffs-Appellees,**

v.

**ABELL–HOWE COMPANY, Defendant-Appellant,**

**Holman Erection Company, Defendant-Appellee.**

**ABELL–HOWE COMPANY, Cross-Petitioner-Appellant,**

v.

**HOLMAN ERECTION COMPANY, a corporation, Defendant to Cross-Petition-Appellee,**

**R. L. Koder Company, Inc., a corporation, Third-Party Defendant-Appellee,**

**Iowa Decks Incorporated and Universal Climate Control, Third-Party Defendants.**

No. 2–56293.

Supreme Court of Iowa.

Feb. 18, 1976.

Swisher & Cohrt, Waterloo, for appellant.

David F. McGuire, Cedar Rapids, for plaintiffs-appellees.

Lynch, Dallas, Smith & Harman, Cedar Rapids, for defendant to cross-petition-appellee, Holman Erection Co.

Ralph W. Gearhart, of Shuttleworth & Ingersoll, Cedar Rapids, for third-party defendant-appellee, R. L. Koder Co., Inc.

Robert C. Nelson and Walter Homsey, Jr., Cedar Rapids, for third-party defendant, Iowa Decks Inc.

Silliman, Gray & Stapleton, Cedar Rapids, for third-party defendant, Universal Climate Control, Inc.

Heard by MOORE, C. J., and RAWLINGS, LeGRAND, REES and McCORMICK, JJ.

RAWLINGS, Justice.

Action at law by plaintiffs, James R. Trushcheff (Trushcheff) and Jeanne Trushcheff, husband and wife, against Abell-Howe Company (Abell-Howe) and Holman Erection Company (Holman) for recovery of damages resulting from Trushcheff's fall through a roof opening in a building then under construction. Trial jury returned verdicts for plaintiffs against defendant Abell-Howe and it appeals from judgments accordingly entered. We affirm.

A prefatory identification of the multiple parties included in this litigation, other than plaintiffs, is deemed appropriate. Abell-Howe is an Illinois corporation engaged in the construction of commercial or industrial structures in Iowa. Holman is a Minnesota corporation which erects the steel superstructure for such buildings. R. L. Koder Company, Inc. (Koder) is an Iowa roofing business corporation and at all times material hereto was Trushcheff's employer. Iowa Decks Incorporated (Iowa Decks) is a local corporate entity specializing in the erection of metal decking for roof construction. Universal Climate Control (Universal), an Iowa corporation, does business as a mechanical contractor devoted to

installation of air conditioning devices and other duct work.

On the other hand, only the plaintiffs, Abell-Howe, Holman and Koder are parties to this appeal.

On or about February 15, 1968, defendant Abell-Howe, as general contractor, was engaged to construct a portional part of the Area Ten Community College (Linn Hall) in Cedar Rapids. Thereafter, Abell-Howe subcontracted much of the work to others. Erection of all reinforcing and structural steel, including the metal roofing deck, was subcontracted to Holman. Construction of the built-up roof was subcontracted to Koder. By late August, the steel erection work had so progressed that metal decking for the roof on Section H (area of the accident) could be laid upon the I-beams, joists and framing angles previously installed.

Pursuant to contract Holman began laying the deck but soon ceased when a labor dispute arose. In order to avoid a work stoppage Holman subcontracted the project to Iowa Decks which completed installation during the Labor Day weekend.

Before Iowa Decks left the site area, Universal's foreman marked out five openings on the metal deck of Section H to accommodate certain ventilating installations. It was one of these five openings through which Trushcheff subsequently fell.

Holman was contractually required to lay the deck in accord with plans and specifications prepared by the architect and *cut openings where specified. Actual cutting, however, was performed by Holman's subcontractor, Iowa Decks, shortly after its work had been completed. The aforesaid openings were thereafter covered by Abell-Howe with sheets of plywood. These were removed and replaced from time to time as on-going construction dictated.

After several weeks of inclement weather Koder commenced installation of the built-up roof. Specifications required a layer of vapor barrier be applied to the metal deck, then two layers of insulation board and finishing felt be laid in an adhesive laminated fashion, with a final coat of asphalt and gravel. As above noted, Abell-Howe was the general contractor. Furthermore, its superintendent regularly directed, supervised and inspected all work done by the subcontractors, including Koder. By October 24th roofing on the east end of the building had been completed. That night Abell-Howe's superintendent advised Trushcheff the west end (instantly involved) was ready for roof application. The morning of the 25th Trushcheff met with his crew, then proceeded to the roof with Glen Dighton and Richard Lee Jeffrey.

Just prior to the fall Trushcheff and his coworkers laid several sheets of vapor barrier. Trushcheff was standing beside the Rollicoater, a machine used in laying vapor barrier. When work had so progressed that there were two openings in the center of the deck, Jeffrey and Dighton pulled a vapor sheet the full width of the working area over each such opening. As this was being done, Trushcheff left the Rollicoater to help affix the vapor barrier. While he was walking toward the west end Dighton allegedly went to the east and punched out the vapor barrier covered holes. On his return to the Rollicoater, preparatory to laying the next sheet, Trushcheff approached one of the openings, whereupon the deck edge unexpectedly tilted causing him to fall. He landed on the second floor down from the roof, resultantly sustaining multiple fractures and a ruptured intra-abdominal artery.

April 26, 1969, Trushcheff returned to work with Koder as a superintendent, absent any physical labor. About three months later he accepted employment with another roofing firm in like capacity. It was later discovered, however, this required more physical effort than he could perform. Trushcheff therefore terminated such employment and commenced operation of a sole proprietorship roofing business. At trial time he was still successfully pursuing his new venture.

After plaintiffs had commenced their action against Abell-Howe and Holman, Abell-Howe cross-petitioned against Holman and third party defendant Koder for common law (quasi-contract) and contractual indemnity, then against Universal for contribution. In turn Holman cross-petitioned against Koder and Iowa Decks for quasi-contract indemnity. Koder sought like indemnity from Holman.

Upon Koder's motion the quasi-contract indemnity division of Abell-Howe's cross-petition against the former was dismissed before answer had been filed. After joinder of issues Abell-Howe unsuccessfully filed a combined motion for summary judgment, judgment on the pleadings and application for adjudication of law points against Koder and Holman for contractual indemnity based upon a written provision in their respective subcontracts.

At trial Abell-Howe urged reconsideration of its aforesaid motions but these were overruled on a law-of-the-case theory. Additionally, at close of all evidence, Koder and Holman successfully moved for directed verdicts on Abell-Howe's actions against them. Holman was granted a directed verdict as to the action brought against it by plaintiffs and they do not appeal this adverse ruling. Holman's cross-action against Iowa Decks was also removed from the case by a directed verdict, not here questioned.

Upon jury verdicts returned for plaintiffs they were granted judgments against Abell-Howe ($80,200 to Trushcheff and $1000 to his wife). Abell-Howe was denied contribution from Universal.

Ultimately, Abell-Howe moved for judgment n. o. v., or in the alternative, a new trial. These motions were overruled.

In support of a reversal, Abell-Howe assigns six errors involving a series of rulings by trial court. The first three relate to plaintiffs, the remainder pertain to Abell-Howe's claimed right to indemnity from other parties hereto. Reduced to bare essentials, these are the issues here presented:

1. Did trial court err in sustaining plaintiffs' pretrial motion in limine regarding Trushcheffs' present business profits?

2. Did trial court err in submitting a jury instruction regarding Abell-Howe's duty to provide plaintiff a safe place to work?

3. Did trial court err in admitting plaintiffs' evidence as to construction industry practice with regard to the guardian of open roof holes?

4. Did trial court err in refusing to grant quasi-contract (common law) indemnity to Abell-Howe from Koder?

5. Did trial court err in refusing to grant quasi-contract (common law) indemnity to Abell-Howe from Holman?

6. Did trial court err in refusing to grant contractual indemnity to Abell-Howe from Holman and Koder?

I. First considered is the pretrial limine order precluding introduction of evidence concerning profits derived from Trushcheff's new roofing business. By affidavit in support of said motion Trushcheff described his duties and stated profits from his business "are completely unrelated to any work which [he] personally perform[s]." Rather, such profits depend largely on his skill in estimating time and expenses in "bidding" for roofing jobs. Finally, the affidavit reveals these figures reflecting his pre and post-injury personal income:

WHILE EMPLOYED AS A ROOFING
FOREMAN

| | |
|---|---|
| 1966 | $11,946 |
| 1967 | 10,382 |
| 1968 | 11,724 |
| 1969 (after injury) [approx. 3 mos.] | 4,883 |

WHILE SELF-EMPLOYED

| | |
|---|---|
| 1969 (August to end of year) | $ 8,538 |
| 1970 | 20,355 |
| 1971 | 25,895 |

After completion of hearing and cross-examination on the aforesaid affidavit trial court sustained plaintiffs' limine motion

and in so doing dictated this into the record:

"I am hereby sustaining the Motion in Limine filed by the Plaintiff relative to the question of admissibility of profits of the Plaintiff in the business which he's conducting at the present time; and I will ask that the respective attorneys not examine the witness in regard to net profits or gross profits in connection with his business nor mention that fact in argument to the jury. *Of course, the attorneys may go into any other facet in connection with his present operation showing, for example, the type of business he is engaged in, the activities that he engages in in connection with that operation, and they can also make inquiry as to whether or not that business is in fact profitable, but as far as specific figures, no.*

"Now, I will say in connection with this that I feel, one, that the profits of this business that he is engaged in is *not solely reflected from personal efforts of the Plaintiff. There are too many other factors involved in this business. Capital equipment, hiring of other employees, and so forth.*

"Also, I feel in this particular case this issue of profits *is not necessarily the earning capacity or the ability in that regard of the Plaintiff but rather measures the earning capacity or ability of the business to generate profits, and I think there is a distinction under the factual situation that we have here * * *.*" (emphasis supplied).

When questioned by counsel as to the effect of such order, trial court explained plaintiff could be interrogated as to whether "his business venture is profitable for him, and so forth", but not as to whether "his income has doubled or tripled or something of that nature", nor whether his income is greater now than before his injury.

Abell-Howe insists this ruling as erroneous and in so doing asserts the excluded testimony was relevant as to Trushcheff's loss of earning power. Plaintiffs, however, question whether Abell-Howe has preserved this alleged error for review.

After trial court announced the above ruling, counsel for Holman asked that Trushcheff's affidavit, "together with our cross-examination of the Plaintiff [and] * * * the cross-examination by counsel for the various parties of Mr. Trushcheff", be accepted by the court as an offer of proof of the excluded testimony. Counsel for Abell-Howe said "Agreeable", as did other attorneys for the various parties. Trial court granted this request.

■ Although Abell-Howe's counsel did not formally make an offer of proof, his agreement with the above proposal had the same effect. In this regard we stated in *Nizzi v. Laverty Sprayers, Inc.*, 259 Iowa 112, 119, 143 N.W.2d 312, 316 (1966): "The general rule is, the failure to offer proof of excluded testimony leaves nothing for review. There is an exception where, upon the whole record, what is sought to be proven is apparent."

It is to us apparent the issue was preserved for appellate review and we proceed accordingly.

II. By his petition Trushcheff alleged he "lost wages and will lose wages in the future; that he has sustained impairment of future earning capacity." Two separate claims were thus advanced and the jury was accordingly instructed.

The question here posed is confined, however, to admissibility of evidence regarding Trushcheff's post-accident business venture earnings.

The pertinent standard is stated in 22 Am.Jur.2d, Damages, § 175, at 248–249:

"Profits are generally defined as the fluctuating income which is dependent upon the employment of capital and labor. Therefore, when the injured party is engaged in a business which involves the investment of capital and the labor of others, as well as that of the injured party, the return which is received from

the business is to be distinguished from personal earnings. *That return, commonly called 'profits', does not measure the earning ability of the plaintiff. It measures instead the earning power of the business involved.* Thus, it is a general rule that loss of profits of a business in which the plaintiff in a personal injury action is interested, which profits depend for the most part upon the employment of capital and labor of others (or upon other similar variables), cannot be considered as the measure or an element of damages for the personal injury. Further, evidence of these profits—as above defined—is not admissible in such an action for the purpose of establishing the value of impaired ability to earn, for the reason that a loss of such profits is not the necessary consequence of the injury. *Otherwise stated, the injury is not the proximate cause of the loss of profits when the profits depend upon the employment of substantial amounts of capital and upon the labor of others."* (emphasis supplied).

See also 22 Am.Jur.2d, Damages, § 92 at 135–136; 25 C.J.S. Damages § 87 at p. 955. See generally *DeWall v. Prentice,* 224 N.W.2d 428, 435 (Iowa 1974); *Shewry v. Heuer,* 255 Iowa 147, 155–157, 121 N.W.2d 529 (1963); Annots., 45 A.L.R.3d 345; 18 A.L.R.3d 88; 12 A.L.R.2d 281; 22 Am. Jur.2d, Damages, §§ 93–94, 97, 173.

■ There is compelling evidence in the record supporting trial court's limine order. In his new business venture Trushcheff did not substantially engage in physical labor. He was no longer an employee of a roofing contractor. On the contrary Trushcheff engaged from four to fifteen employees, eight at trial time. Although his original investment in the new industry was rather small, it included approximately $12,000 in depreciable assets at time of trial.

In this new endeavor Trushcheff operated on a "bid" basis. A "good bid" produced profits; a "bad bid" could mean financial ruin. Furthermore, although his business was operated as a sole proprietorship, he functioned in conjunction with another independent roofing company, with the two bidding on projects cooperatively.

Plaintiffs thus succinctly summarize the related testimony:

"Suffice it to say that the simple naked evidence that the plaintiff over his 25 years in performing services as a roofer was never able to make more than $12,-000.00 per year, and that in his first full year of business after being 35% disabled had net profits of nearly twice as much as he had ever earned before in his life, in and of itself is very persuasive that the profits were being produced by something other than the plaintiff's own earnings."

In light of all relevant testimony it is difficult to differ with this conclusion.

Abell-Howe leans heavily on *Mitchell v. Railway Co.,* 138 Iowa 283, 114 N.W. 622 (1908). But *Mitchell* is inapposite and fails to support the position Abell-Howe here takes. In concluding a lengthy discussion as to impairment of earning capacity, this court stated, 138 Iowa at 294, 114 N.W. at 626:

"[W]e think there is substantial unanimity in the opinions that proof of profits in a business pursued by the injured person, *mainly dependent on his personal exertions,* are admissible as tending to show what his earning power was prior to the injury \* \* \*." (emphasis supplied).

The above italicized words reveal the fatal defect in Abell-Howe's theory, i. e., Trushcheff's business profits were *not* "mainly dependent on his personal exertions."

Moreover, Abell-Howe was not precluded from offering evidence as to the *value* of Trushcheff's services to the business, as opposed to related *profits or income.* See generally *Klingbeil v. Truesdell,* 256 Minn. 360, 98 N.W.2d 134, 141–142 (1959).

Abell-Howe's first assignment is devoid of merit.

III. The question next posed is whether trial court erred in submitting a jury instruction regarding Abell-Howe's duty to provide Trushcheff a safe place to work.

By instruction 6 the jury was told, in part, plaintiffs had the burden to prove Abell-Howe "was negligent in failing to provide Plaintiff James R. Trushcheff with a safe place in which to work". Abell-Howe objected "for the reason that it is a general specification of negligence as opposed to being limited to specific acts of negligence", and supportively argued trial court should require plaintiffs "to prove the specific acts as opposed to sending to the jury the broad spectrum of negligence which might fall within the category of failing to provide a safe place to work".

On appeal the issue is thus framed: "The trial court erred in submitting an unpled general allegation of negligence as opposed to such of the specifications of negligence pled by the Trushcheffs as were supported in the evidence; * * *."

A comparison of the relatively inarticulate objections, *supra,* with the issue now put by Abell-Howe makes it difficult to determine the specific error urged in support of a reversal. In any event, Abell-Howe does not deny it had a duty to provide Trushcheff a safe place to work. Consequently, the alleged error, if any, must rest on (1) an incorrect belief that plaintiffs did not plead the "safe place to work" element or (2) the equally mistaken view that the controverted instruction was too general.

In the first place plaintiffs specifically pled the "safe place to work" element of negligence three times in their amended and substituted petition. Therefore, Abell-Howe's argument must stand or fall on its contention the instruction was too general. The essence of this novel theory appears to be (1) plaintiffs pled 12 particular specifications of negligence; (2) the "safe place to work" instruction was general and could include acts of negligence not otherwise pled; and (3) the jury verdict may have

been based on speculation and other acts of negligence not established. This argument is faulty for at least two reasons. *First,* it completely ignores the fact that failure to provide a safe place for Trushcheff to work was a specification of negligence. *Second,* it ignores an abundance of evidence upon which the jury could reasonably find Abell-Howe breached such duty.

Upon the basis of our holding in *Giarratano v. The Weitz Co., Inc.,* 259 Iowa 1292, 1308–1310, 147 N.W.2d 824 (1967) the instant assignment must be and is resolved adverse to Abell-Howe. See also *Simon v. Omaha Public Power District,* 189 Neb. 183, 202 N.W.2d 157, 164–165 (1972); Annot., 20 A.L.R.2d 868.

IV. Abell-Howe next maintains trial court erred in admitting evidence of a building construction industry custom as to guarding of open roof holes with wooden curbs or like fixtures.

In course of trial plaintiffs adduced evidence regarding an industry practice to affix "wooden curbs" around the perimeter of metal deck cuts or openings. Abell-Howe contends the use of such curbs was not contemplated by architectural plans and specifications. Consequently it argues the testimony was "incompetent, irrelevant and immaterial, for such failure, if any, could not as a matter of law have been the proximate cause of Mr. Trushcheff's fall."

Attendantly, Abell-Howe maintains the plans and specifications for this particular job called for "rough wood" and prefabricated aluminum curbs to be placed around these openings *after* the "vapor seal" had been applied. And, in view of the fact plaintiff's fall occurred *while* the vapor seal was being applied, no contractual duty to install the rough wood and aluminum curbs had yet attached. Resultantly, says Abell-Howe, trial court erroneously admitted testimony showing the rough wood and aluminum curbs had not been installed at the time and place of plaintiff's fall.

Abell-Howe correlatively takes the position trial court wrongfully overruled Division II of its combined motion for judgment n. o. v. or a new trial, wherein the same grounds above set forth were again voiced.

Determination of this issue requires a closer examination of the record.

■ In brief, plaintiffs adduced evidence by direct and cross-examination of several witnesses regarding the aforesaid industry custom. To all questions put in that regard Abell-Howe interposed the above noted "immaterial and irrelevant" objections which were overruled. This is one of the answers elicited:

"A. I noticed on other roofs that we have worked on they have had 4 × 4's or 2 × 4's built up around the outside of the holes because we put our flashing up there and our insulation, but this one was just open."

Another testimonial response was:

"A. Well, the normal procedure in a case of that kind where it's specified, we take a two-inch board and just make a frame the size or just a little bigger than the opening that is cut in the deck and the two by [four] will be standing upright, the wide way would be up and that will be fastened all the way around the opening, in other words, to form—if it's a six inch high curb they call for, it will be a two inch by six inch high; if its 12 inches it would be 12 inches high and so forth."

Abell-Howe's objections sufficed to preserve error, if any. As this court said in *State v. Clay,* 213 N.W.2d 473, 477 (Iowa 1973):

" 'The word "incompetent" as applied to evidence means no more than inadmissible, and thus cannot be said to state a ground of objection.' McCormick on Evidence, Second Edition, section 52. It is condemned for lack of precision.

"As respects objection to testimony the terms 'immaterial and irrelevant' are used interchangeably; but 'immaterial' more precisely denotes evidence which is offered to prove a proposition not at issue, while 'irrelevant' denotes evidence which does not logically tend to establish any material proposition. [Citation].

" * * *

"The objections, 'irrelevant and immaterial,' when admissibility of evidence is challenged in the trial court on either of those grounds are sufficiently specific to raise the issue in this court."

See also *State v. Ritchison,* 223 N.W.2d 207, 212 (Iowa 1974).

We are, therefore, called upon to determine whether evidence as to said trade custom was admissible.

■ It is evident testimony such as above set forth had some probative value regarding Abell-Howe's duty to provide Trushcheff a safe place to work, the weight thereof being for jury determination.

Unquestionably, the challenged testimony also met the relevancy test. See *Schiltz v. Cullen-Schiltz & Assoc., Inc.,* 228 N.W.2d 10, 16 (Iowa 1975).

Furthermore, as stated in *Hagenson v. United Telephone Company of Iowa,* 209 N.W.2d 76, 80 (Iowa 1973): "A determination as to the relevancy and materiality of evidence rests largely in the trial court's discretion."

■ Pursuing the subject further, Abell-Howe contends the involved testimony was irrelevant and immaterial because its contract with the owner of the premises called for compliance with architectural plans and specifications which did not require installation of curbs until *after* the vapor seal had been applied. Addressing ourselves to similar arguments advanced in *Evans v. Howard R. Green Co.,* 231 N.W.2d 907, 912–913 (Iowa 1975), this court said: " 'We reject the ingenious and startling theory that a person can, by contract with a third party, lay down his own rules as to when he will be liable to those whom his negligence injures.' " In other words, the scope of Abell-

Howe's duty to Trushcheff could not be limited by its contract with Area Ten Community College, or by the latter's approval of its architect's plans and specifications. As articulated in *Grennell v. Cass County,* 193 Iowa 697, 702, 187 N.W. 504, 506 (1922):

"[A]n independent contractor, who performs the work undertaken by him according to the terms of his contract and the plans and specifications furnished for his guidance, does not become liable in damages to any third person suffering injury by reason of any mistake, fault, or defect *in such plans or specifications.* But this exemption from liability does not extend to his own negligence, if any, in carrying out his contract or in performing the work he has undertaken to do."

Although Abell-Howe's contractual duty to install the curbs had not yet matured at the time Trushcheff fell, its duty of care as to him before those curbs were installed was not controlled by any architectural plans and specifications. Certainly it cannot be plausibly argued Abell-Howe owed Trushcheff no duty of care at time of the accident. See Restatement, Second, Torts, §§ 413, 416, 427. Therefore, introduction of evidence as to roofing trade custom with regard to the providing of curbs for open holes in the metal deck was properly permitted. See *Anthes v. Anthes,* 258 Iowa 260, 273–274, 139 N.W.2d 201 (1965). See also *Evans v. Howard R. Green Co.,* 231 N.W.2d at 913; *Johnson v. A. Schilling & Company,* 170 Cal.App.2d 318, 339 P.2d 139, 142–143 (1959).

Finding as we do the controverted testimony was not irrelevant or immaterial, Abell-Howe's third assignment of error is rejected.

Moreover, by virtue of the fact no error attended any issue considered *supra,* the judgment for plaintiffs against Abell-Howe stands affirmed.

V. This brings us to another facet of the case not directly related to Trushcheffs.

More specifically, Abell-Howe first seeks quasi-contract indemnity from Koder. See

D. Furnish, Distributing Tort Liability: Contribution and Indemnity in Iowa, 52 Iowa L.Rev. 31, 35–36 (1966). See also *Ke-Wash Company v. Stauffer Chemical Company,* 177 N.W.2d 5, 9 (Iowa 1970).

By Division II of its cross-petition against Koder, Abell-Howe asserts (1) plaintiffs' (Trushcheffs') petition alleges acts of negligence by Abell-Howe which "in every event allege the breach of duties which were the primary obligation of [Koder] in the performance of [Koder's] work" under Koder's subcontracting agreement with Abell-Howe; (2) Koder is "primarily liable" to Trushcheffs while Abell-Howe is "secondarily liable"; and (3) Abell-Howe is therefore entitled to indemnity from Koder.

Koder effectually moved for dismissal of the foregoing cross-petition. Subsequently, Abell-Howe filed a substituted and amended cross-petition, admittedly based on "substantially the same theory" as before. Again, Koder successfully moved to dismiss.

In essence, Koder's dismissal motions were based on these three grounds:

(1) Trushcheffs' allegations of negligence on Abell-Howe's part involve a breach by the latter of "non-delegable duties", constituting "direct active negligence" by Abell-Howe;

(2) The provisions of Koder's subcontracting agreement with Abell-Howe do not serve to impose upon Koder any responsibility for performance of obligations which Trushcheffs allege were breached by Abell-Howe; and

(3) Workmen's compensation provisions of the Iowa Code insulate Koder from Abell-Howe's indemnity claim.

At this point it should be noted Abell-Howe's request for quasi-contract indemnity from Koder appears to stem, in large part, from Koder's "Sub-Contract" with Abell-Howe. Koder thereby agreed to "furnish all materials and labor, including all necessary scaffolding, and fully construct and in a good, substantial, thorough

and workmanlike manner perform and in every respect complete the roofing and roof insulation requirements * * *." The contract also declares: "The Sub-contractor shall provide sufficient, safe and proper facilities at all times *for the inspection of the work* by the Architect, the Contractor or his authorized representatives. * * *." (emphasis supplied).

These are the only provisions of the contract cited by Abell-Howe in support of its argument to the effect the subcontract somehow delegated to Koder a duty or duties which the former owed to Trushcheff. Abell-Howe thus summarizes its theory:

> "If such facts [that Trushcheff was injured while working for Koder, and Koder was performing work called for under the subcontracting agreement and Abell-Howe's acts of negligence as alleged by Trushcheffs were the breach of duties delegated to Koder by Abell-Howe under the subcontract] are deemed true, as they must be in testing the propriety of a Motion to Dismiss, Abell-Howe has stated a cause of action as contemplated by Comment 'c' of Section 416 of Restatement, Second, Torts."

■ But, the subcontract between Abell-Howe and Koder delegated nothing more to Koder than the duty to (1) properly install the roofing and (2) provide safe facilities for inspection. The subcontract says no more than this and neither of these "delegated duties" has any bearing whatsoever on the matter of providing a safe place for workers to function.

In *Giarratano v. The Weitz Co., Inc.,* 259 Iowa at 1307–1308, 147 N.W.2d at 833–834, this court expressly adopted Restatement, Second, Torts, § 416, which provides:

> "One who employs an independent contractor to do work which the employer should· recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of

the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

Abell-Howe supportively cites *Walker Manufacturing Co. v. Henkel Construction Co.,* 346 F.Supp. 621 (N.D.Iowa 1972) and *Elliott Consolidated School District v. Busboom,* 227 F.Supp. 858 (S.D.Iowa 1964).

In *Walker, supra,* a plant owner sued the contractor, roofing subcontractor and others for a defective roof. The contractor and roofing subcontractor cross-claimed against each other. The court held the subcontractor liable for failing to lay the roof in a good and workmanlike manner. Aside from the fact *Walker* has nothing to do with personal injuries or § 416 of Restatement, Second, Torts, the roofing subcontractor was found to have breached its agreement with the general contractor "by failing to lay the roof specified in the contract. As a result thereof and for no other reason, [the general contractor] breached its contract with [the owner], thus causing [the general contractor] to be liable for damages to [the owner]." 346 F.Supp. at 634. Stated otherwise, *Walker* involved nothing more than a breach of the roofing company's contractual duty to lay the roof as it had specifically agreed.

*Elliott Consolidated School District, supra,* is also inapposite. There the court said, 227 F.Supp. at 864:

> "The basis for the indemnity is that [the roofing subcontractor] had breached an implied duty they owed to [the general contractor] and that [the general contractor and his surety] are liable solely for that reason. The alleged breach of duty is the failing to perform the agreement to construct a roof on the school which complies with the specifications and good workmanship. *Blackford v. Sioux City Dressed Pork, Inc.,* 254 Iowa 845, 118 N.W.2d 559, in general acknowledges such a cause of action."

■ Assuming, arguendo, Abell-Howe's cross-petition alleges Koder breached its

contract with the former in not laying the roof in a "thorough and workmanlike manner", it still remains Abell-Howe failed to show how this alleged breach could be connected with any of the specifications of negligence alleged by plaintiffs against Abell-Howe. It is also evident that if Koder had failed to construct the roof "in a good, substantial, thorough and workmanlike manner" such was not shown to have been in any manner connected with Abell-Howe's duty to provide a safe place to work. Moreover, no such duty imposed on Abell-Howe was in any manner contractually assumed by Koder.

VI. The second ground urged by Koder in support of said motion to dismiss Abell-Howe's cross-petition is that it did not state a cause of action because the allegations of negligence asserted by Trushcheffs against Abell-Howe involved a breach of nondelegable duties and could thus only constitute primary negligence on Abell-Howe's part. Abell-Howe seeks refuge in the italicized one-sentence excerpt from comment "c" to Restatement, Second, Torts, § 416:

"Section 413 states the liability of one who employs an independent contractor to do such work and does not provide in the contract that the contractor shall take the precautions necessary to make its progress safe. This Section deals with the liability of one who employs a contractor to do such work, even though he stipulates in his contract or in a contract with another independent contractor that the precautions shall be taken, for bodily harm caused by the negligent failure of either contractor to take such precautions. *In such case the contractor who is employed to take the precautions is under a duty to indemnify his employer for any liability which the contractor's negligence in failure to take reasonably adequate precautions may bring upon him.* However, the fact that the contract contains express stipulations for the taking of adequate precautions and that the contractor agrees to assume all liability for harm caused by his failure to do so, does not

relieve his employer from the liability stated in this Section." (emphasis supplied).

■ At the outset, as disclosed *infra,* Koder was not "employed to take the precautions" noted in the first sentence of comment c, quoted above. In other words, the second sentence does not stand alone and must be read in the context of the first and third sentences. Furthermore, this court said in *Giarratano v. The Weitz Co., Inc.,* 259 Iowa at 1308, 147 N.W.2d at 834:

"Sections 413 and 416 should be construed together though the risks described in these two sections are worded differently. ('A peculiar unreasonable risk of physical harm to others' as opposed to 'peculiar risk of physical harm to others'.) A change in section 416 should also be noted. The old rule said the work must be such as '*necessarily* requiring * * * a peculiar risk of bodily harm to others unless special precautions are taken,' whereas the new rule only requires the work be such as '*likely* to create * * * a peculiar risk of physical harm to others unless special precautions are taken.'"

"The employees of an independent contractor come within the word 'others' in sections 413, 416 and 427 of the Restatement. *Woolen v. Aerojet General Corporation,* 57 Cal.2d 407, 20 Cal.Rptr. 12, 369 P.2d 708, 711; *Mallory v. Louisiana Pure Ice & Supply Co.,* 320 Mo. 95, 6 S.W.2d 617, 623–627; *International Harvester Co. v. Sartain,* 32 Tenn.App. 425, 222 S.W.2d 854, 865–868.

"We hold the duties outlined in the quoted sections of the Restatement are owed by a principal contractor to workmen of an independent contractor on the job."

It must also be emphasized Abell-Howe's cross-petition incorporated, by reference, the specifications of negligence which Trushcheffs pled against it. Significantly, no less than six of them charge Abell-Howe neglected to supply adequate support and

"framing angles" for the deck. But Koder had no responsibility in connection therewith. By incorporating plaintiffs' specifications of negligence in its cross-petition, Abell-Howe is in the anomalous position of charging Koder with breach of contract regarding duties which Abell-Howe had agreed to perform. Additionally, Koder had no duty to lay the roof—and could not do so—until the deck was installed. Under these circumstances it cannot be effectively maintained Koder was responsible for the above mentioned elements of negligence.

Some of the other specifications asserted by plaintiffs against Abell-Howe do allege the latter's duty to provide a safe place to work and require adequate safety precautions. But, as aforesaid, this does not mean such duties were in any manner delegated to or assumed by Koder. The Abell-Howe agreement with Koder does not lend itself to any such strained interpretation.

In view of the fact Koder did not (1) lay the deck, or (2) cut the holes therein, or (3) omit installation of curbs around such holes, it is difficult indeed to find wherein any negligence attending Trushcheff's fall could be linked to Koder. Therefore, Trushcheff had no fall-related tort right which arose out of any separate or independent duty owing to him by Koder. Thus *Blackford v. Sioux City Dressed Pork, Inc.*, 254 Iowa 845, 118 N.W.2d 559 (1962) does not come into play. Resultantly, there is no basis upon which Trushcheff could effectively recover damages in tort from Koder.

This court is persuaded that neither the failure to discover another's negligence, nor the comparative culpability concept is here applicable as to Koder. See 52 Iowa L.Rev. at 46–48. See also *Koppinger v. Cullen-Schiltz & Associates,* 513 F.2d 901, 910 (8th Cir. 1975); *Fairfield Engineering Co. v. Winger Construction Co.*, 309 F.Supp. 64, 66–67 (S.D.Iowa 1969); *Iowa P. & L. Co. v. Abild Constr. Co.*, 259 Iowa 314, 322–325, 144 N.W.2d 303 (1966).

We are satisfied Abell-Howe established no right to quasi-contract indemnity from

Koder. See generally *Evans v. Howard R. Green Co.*, 231 N.W.2d at 917.

For reasons above set forth, trial court's dismissal of Abell-Howe's cross-petition against Koder was proper.

VII. Our position need not rest, however, upon the above rationale alone.

Referring again to *Iowa P. & L. Co. v. Abild Constr. Co.*, 259 Iowa at 323, 144 N.W.2d at 309, this court there observed:

"Only in those instances in which the party passively negligent has been allowed indemnity from the party actively negligent, do you have a situation in which 'indemnity is only an extreme form of contribution'. *Slattery v. Marra Bros.,* 2 Cir., 186 F.2d 134, 138. Such cases involve concurrent negligence (of different degrees) of the tort-feasors toward the injured party. *This form of indemnity is barred by the common liability rule when one of the tort-feasors is an employer under the Workmen's Compensation Act.* Indemnity is permissible when the right arises out of a separate duty due the third party from the employer." (emphasis supplied).

And the above holding was thus applied in *Fairfield Engineering Co. v. Winger Construction Co.*, 309 F.Supp. at 66:

"It is undisputed that at the time of the accident the four injured men were employees of Winger and covered by the Iowa Workmen's Compensation Act. The plaintiffs are, therefore, entitled to recover against Winger only in indemnity, and then only if they prove there was a separate duty owed them by the employer, Winger."

In the case at bar it is alleged by Trushcheffs (and incorporated in Abell-Howe's cross-petition) his fall occurred when he stepped near the edge of a deck opening. It is further asserted by Trushcheff the "framing angle" and other deck supports did not work properly. Noticeably, the deck and related fixtures had been installed by Abell-Howe and Holman (partially by

Iowa Decks). Consequently, Koder had no control over or responsibility as to any pre-roofing deck work.

■ Bearing in mind (1) Trushcheff was Koder's employee, (2) there was no separate duty owing by the latter to the former upon which tort liability could instantly attach, and (3) Trushcheffs' right of recovery from Koder was limited to workmen's compensation benefits, there could be no common liability to Trushcheff as between Abell-Howe on one hand and Koder on the other. From this flows the conclusion Abell-Howe was entitled to no quasi-contract indemnity from Koder.

Again, trial court did not err in dismissing Abell-Howe's cross-petition against Koder.

VIII. This brings us to the matter of Abell-Howe's right to quasi-contract indemnity from Holman.

At close of all evidence Holman (a defendant to Trushcheffs' petition and Abell-Howe's cross-petition) moved for a directed verdict in its favor upon the aforesaid actions. Trial court sustained both motions with this observation:

"All right, as far as the Court is concerned with reference to the motion for directed verdict as against the Plaintiffs, I do not believe that there is any credible evidence in the record that would justify a jury to find that the Defendant Holman was negligent in creating a 'dangerous situation' which caused the injury to the Plaintiff. I just do not feel there is sufficient evidence in the record under which a jury could find liability on the part of Holman Erection Company, and I am directing a verdict in favor of Holman as against the Plaintiff.

"As far as the issues between Holman and Abell-Howe on the issues of negligence, I feel the same way, I just don't feel that there is enough evidence in the record to show any liability here on the part of Holman with reference to this injury, and I am directing a verdict on the cross-petition against Abell-Howe."

As heretofore stated, plaintiffs do not appeal this adverse ruling, but Abell-Howe controverts same on its appeal.

The argument advanced in support of a reversal can be thus summarized: The injury would not have occurred but for the defective means in which the steel "superstructure", framing angles, and metal decking were installed. These tasks were performed by Universal (as prime air and duct work contractor) and Abell-Howe's subcontractors, Koder and Holman. The jury returned an answer to a specific interrogatory which exonerated Universal from liability upon Abell-Howe's cross-petition. By reason thereof any defect causing the instant accident must have resulted from negligence of either Koder or Holman. Abell-Howe also claims the question should have been submitted to the jury under this holding in *Stowe v. Wood*, 199 N.W.2d 323, 327 (Iowa 1972): "The general rule is that issues of fact in such cases should be submitted to the jury with the court then determining the right to indemnity or contribution based upon the findings made by the jury."

Holman's response to the above contention raises an issue which is delineated, as best possible, by this line of reasoning: Basic to any right of quasi-contract indemnity is (1) negligence on the part of Holman (indemnitor) and (2) absence of primary or active negligence by Abell-Howe (indemnitee). But, as to Trushcheffs' action against Holman, trial court directed a verdict for Holman from which Trushcheffs have taken no appeal. Upon this premise it is argued the Trushcheff-Holman case is now a "final adjudication" not subject to attack, thus exonerating Holman from the negligence alleged as to it by Trushcheffs. Furthermore, by virtue of the fact Abell-Howe's cross-petition against Holman expressly incorporates the Trushcheff petition by reference, and is completely based thereon, Holman maintains there is identity of parties and interests sufficient to justify invocation of the res judicata or issue pre-

clusion concept with regard to Abell-Howe's cross-action. The fact the jury found Abell-Howe negligent would, it is urged, bar indemnity in any event.

As a preface to further discussion it is understood:

"Rules governing our review in this case are well settled. In considering the propriety of a directed verdict we examine the evidence in its light most favorable to the party against whom it was directed. The movant is considered to have admitted the truth of all evidence offered by his adversary and every favorable inference which may fairly and reasonably be deduced from it. [Citation]. The question of negligence, like the question of proximate cause, is generally for the jury and may be decided as a matter of law only in exceptional cases." *Larkin v. Bierman,* 213 N.W.2d 487, 488 (Iowa 1973).

On the other hand, Holman argues Abell-Howe's allegations of negligence against Holman are exactly the same as those alleged by Trushcheffs against Abell-Howe, and Trushcheffs obtained a jury verdict against Abell-Howe, so the questions raised here as to Holman's negligence must be held to have been effectively resolved by the verdict against Abell-Howe.

In brief, Holman contends trial court's directed verdict can be supported on either of two theories: (1) the res judicata principle mentioned above or (2) the evidence does not support a finding that Holman was negligent. These approaches will be considered in reverse order.

A. Was the directed verdict for Holman proper because of insufficient evidence to support a finding of its negligence? This is the only question addressed by Abell-Howe on appeal. Applying the standard of review for directed verdicts, i. e., considering the substantive evidence in a light most favorable to Abell-Howe, the following could be reasonably found by the fact finder.

As aforesaid, construction of the decking was subcontracted to Holman and by it, in part, to Iowa Decks. It was their responsibility to erect all structural steel, including framing angles, in a "good, substantial, thorough, and workmanlike manner". Koder was required to construct the built-up roof per the same standards. Approximately an hour before the accident, one of Trushcheff's coworkers noticed a "flimsy" area in the deck but did not warn any of his fellow employees thereof.

Looking to the other side of the coin, there is abundant evidence in the record supporting Holman's position. The accident did not occur until approximately two months after Holman's work had been completed. In the interim Abell-Howe inspected the deck, approved the work and paid Holman in full. See Annot., 58 A.L.R.2d 865, 876, 879–880. Also, as aforesaid, Abell-Howe's superintendent told Trushcheff, the night before the accident, the deck was ready for Koder's workers to begin laying the roof cover. It further appears Abell-Howe concedes all of the framing angles had been installed as required by the architect's facially adequate plans and specifications. See *Davis v. Henderlong Lumber Company,* 221 F.Supp. 129, 133–134 (N.D. Ind.1963); *Tipton v. Clower,* 67 N.M. 388, 356 P.2d 46, 49 (1960); 13 Am.Jur.2d, Building, Etc. Contracts, § 140 at 131–132. See also Restatement, Second, Torts, §§ 413, 414; 13 Am.Jur.2d, Building, Etc. Contracts, § 139.

On balance, the testimony instantly relied upon by Abell-Howe for reversal appears to exonerate rather than show culpable negligence by Holman.

B. Alternatively, assuming arguendo, there was sufficient evidence disclosing Holman's negligence, as alleged, is Abell-Howe precluded from attacking said directed verdict for Holman under res judicata or issue preclusion principles?

Briefly stated, this is Holman's rationale: (1) Trushcheffs did not appeal the directed verdict for Holman on their cause

of action against the latter, and to all intents and purposes it is a "final judgment"; (2) Abell-Howe cross-petitioned and went to trial against Holman, therefore these two entities were "adverse litigants"; (3) Holman's alleged acts of negligence were the same as those asserted by Trushcheffs against Abell-Howe so there was an "identity of issues"; (4) both Holman and Abell-Howe were defendants under Trushcheffs' petition, which means there existed as between these two defendants an "identity of interest"; (5) the jury verdict for Trushcheffs against Abell-Howe established its negligence; and (6) the directed verdict for Holman on Trushcheffs' action against the former conclusively established Holman was not negligent. Consequently, says Holman, Abell-Howe cannot have benefit of quasi-contract indemnity.

In *Schneberger v. United States Fidelity & Guar. Co.*, 213 N.W.2d 913, 917 (Iowa 1973), this court said:

"To bar further litigation on a specific issue four requirements must be established:

"(1) The issue concluded must be identical.

"(2) The issue must have been raised and litigated in the prior action.

"(3) The issue must have been material and relevant to the disposition of the prior action, and

"(4) The determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

"[Citation].

"Identity of parties is not necessary to give validity to a claim of issue preclusion. A stranger to a primary suit can assert the theory of issue preclusion as a defense in a subsequent suit provided other elements of the theory of issue preclusion coincide. [Citations]."

Applying the above four criteria we find merit in Holman's argument. The only significant difference between *Schneberger,*

*supra,* and the case at hand lies in the fact it does not involve a "prior" action, i. e., the issues were here determined in one trial involving various cross-actions. See Rule 33, Iowa R.Civ.P.

Incidentally, Abell-Howe was plaintiff on its cross-petition against Holman with the latter cast in the role of defendant, and Koder became a defendant to cross-petitions by Abell-Howe and Holman as plaintiffs respectively. See *Kriv v. Northwestern Securities Co.*, 237 Iowa 1189, 1194–1195, 24 N.W.2d 751 (1946).

Mindful of the foregoing we now allude to this editor's comment, 24 A.L.R.3d, 318, 323:

"In final analysis much of the difference between the several rules announced [res judicata-codefendants] is a matter of semantics, the essence of all of them being that such a prior judgment is not conclusive in the subsequent action *unless the codefendants occupied adversary positions in the prior action and actually litigated therein the issue of their liability inter se as well as the issue of their liability to the injured party.*" (emphasis supplied).

The present controversy falls squarely within the italicized exception to the general rule quoted above. In other words, Abell-Howe and Holman were codefendants to the Trushcheff action but occupied adversary positions by reason of Abell-Howe's cross-petition against Holman. They also fully litigated the matter of liability, one to the other and each respectively as to the Trushcheffs.

Among the cases cited by Holman, at least two merit some discussion. In *Karon v. E. H. Marhoeffer, Jr., Co.*, 14 Ill.App.3d 274, 302 N.E.2d 478 (1973), a pedestrian brought action against a general contractor and subcontractor for injuries sustained when he fell at a construction site. The contractor and subcontractor were, as here, codefendants. The subcontractor filed a motion for summary judgment against plaintiff pedestrian, and in sustaining such

motion trial court found the subcontractor "not guilty of any negligence which proximately caused the injuries and/or occurrence complained of by the plaintiff." Three months later, the general contractor commenced a third-party action against the subcontractor, alleging the latter was actively negligent, the general contractor passively negligent, if at all. The general contractor further alleged he was entitled to contractual indemnity from the subcontractor. The subcontractor successfully moved to dismiss the third-party action, and in upholding this motion the court said, 302 N.E.2d at 481:

"In the present case, in order to recover from [the subcontractor] on the theory of active-passive negligence * * *, [the general contractor] must prove active negligence on the part of [the subcontractor] as to [the injured party]. This issue is however, precisely the same issue which Judge Shamberg decided when he found that [the subcontractor] was 'not guilty of any negligence which proximately caused the injuries and/or occurrence complained of by [the injured party].' Moreover, as to Count II of the third party complaint seeking indemnification only as a result of negligent operations of [the subcontractor], the finding of Judge Shamberg that there was no such negligence does not give rise to any contractual liability of [the subcontractor] to [the general contractor]."

In *American Motorists Ins. Co. v. Vigen*, 213 Minn. 120, 5 N.W.2d 397 (1942), plaintiff brought action against defendants A and B for injury-related damages. Judgment was entered against A but B was exonerated. In a later action, A sued B for contribution. In refusing recovery by A the court commented, 5 N.W.2d at 399–401:

"It must be conceded that the judgment in favor of the successful defendant and against the injured plaintiff as between them is conclusive that there is not and never was any liability whatever on the part of the successful defendant to the injured party. No recovery could ever have been had by the injured party against him. Hence it would seem to follow that there could never have been a common liability. That is res judicata between the injured plaintiff and the successful defendant. In cases where the judgment is against both or all defendants, it is likewise res judicata between the original plaintiff and such defendants. Is it not, then, an adjudication of such an essential element of the suit for contribution as to preclude recovery in the cases at bar?

" * * *

"[S]ound reason would seem to dictate that, where as between the injured person and a codefendant it has been fully adjudicated that there is no liability, an action for contribution will not lie; * *. Such a judgment is res judicata upon any essential element of a claim or action subsequently brought by one of them against the other."

See also *Town of Flagstaff v. Walsh*, 9 F.2d 590 (9th Cir. 1925).

In principle, we find no basis upon which to hold the case at bar is distinguishable from the foregoing merely on the ground that Holman's "success" in connection with the Trushcheff action was based upon a nonappealed directed rather than jury verdict, as both generally have the same judgment-related effect. See 49 C.J.S. Judgments § 86 at p. 208. Similarly, the fact that a classical "prior adjudication" is not here present is of little or no consequence for, as between Abell-Howe and Holman, the Trushcheff-Holman action stands as a final, "prior" adjudication. See generally A. Vestal, "Preclusion/Res Judicata Variables: Parties", 50 Iowa L.Rev. 27, 36–37 (1964).

Under existent circumstances trial court's aforesaid directed verdict for Holman must stand.

IX. Finally, we are called upon to determine whether trial court erred in refusing to grant contractual indemnity to Abell-Howe from Holman and Koder.

As part of their subcontracting agreements with Abell-Howe, Koder and Holman signed a "Hold Harmless Agreement", both providing, in relevant part:

"It is understood and agreed that the Sub-Contractor will indemnify and save harmless the General Contractor and the Owner from and against any and all claims for injury or death to persons or damage to property (including cost of litigation and attorneys' fees) in any manner caused by, arising from, incident to, connected with or growing out of the work to be performed under this contract regardless of whether such claim is alleged to be caused, in whole or in part, by negligence or otherwise on the part of the Sub-Contractor, its employees, agents or servants."

Based upon this proviso, Abell-Howe filed a combined motion for summary judgment and application for adjudication of law points against Koder, and a similar motion (plus one for judgment on the pleadings) against Holman. In seeking contractual indemnity Abell-Howe argues the above quoted agreement is all-inclusive requiring Koder and Holman to indemnify Abell-Howe even for the consequences of Abell-Howe's negligence.

As trial court observed, contractual indemnity would have been allowable as requested had the quoted agreements expressly included coverage for Abell-Howe's negligence, but this was not done.

In support of its position Abell-Howe argues (1) the agreement was plain and unambiguous, therefore not open to judicial construction; (2) trial court's holding is against "the weight of authority"; and (3) the agreement "is all-inclusive".

Holman and Koder respond, the agreement was subject to construction because a majority of courts, in construing similar "unambiguous" agreements, have denied indemnity to contractors if the contract does not expressly provide for indemnity for the contractor-indemnitee's own negligence.

Holman and Koder assert the weight of authority supports their position.

In any event, we are persuaded *Evans v. Howard R. Green Co., supra,* is controlling. There a contractor's employees were killed by poison gas while working in a sewage treatment plant. Upon being sued the architect cross-petitioned against the contractor for contractual indemnity. Trial court entered judgment against the contractor. On appeal we reversed and in so doing said, 231 N.W.2d at 916:

"Indemnity contracts are subject to the usual rules governing their formation, validity and construction. 41 Am.Jur.2d, Indemnity, § 6, page 691.

" * * *

"It might be noted [the architect's] position may well be untenable under the rule *an indemnity agreement generally will not be construed to cover losses to the indemnitee caused by his own negligence. In order to do so the agreement must be clear and unequivocally expressed. General, broad and all-inclusive language is insufficient for the purpose.* 15 Williston on Contracts, § 1750A, page 143. See also 41 Am.Jur.2d, Indemnity, § 15, pages 699–700; 42 C.J.S. Indemnity § 5, page 569 and § 12, page 580; Annot., 27 A.L.R.3d 663, 716 et seq.

"In claiming the benefit of the provisions of the contract in question [the architect] stands as the indemnitee. [He] drew the specifications, drew and administered the contract through which the right of indemnity is claimed. See *Sears, Roebuck and Co., Inc. v. Poling,* 248 Iowa 582, 81 N.W.2d 462 (1957); 17 C.J.S. Contracts § 262, pages 1160–1161.

"Although [the architect] might well be barred from claiming the right of indemnity under the foregoing rule we rely on the limitations of the contractual provision itself." (emphasis supplied).

The foregoing clearly states this court's position on the issue now before us.

Any discussion of the myriad cases cited by all involved parties will serve no useful purpose.

Trial court correctly denied contractual indemnity to Abell-Howe from Holman and Koder.

Affirmed.

MOORE, C. J., and LeGRAND and REES, JJ., concur.

McCORMICK, J., concurs specially.

McCORMICK, Justice (concurring specially).

I concur in the result and all of the majority opinion except Division VII. I do not believe the rights and obligations of tortfeasors between themselves should be made to depend upon their common liability to the injured person. See dissenting opinions in *Iowa Power and Light Co. v. Abild Construction Co.*, 259 Iowa 314, 144 N.W.2d 303 (1966) and *Shonka v. Campbell*, 260 Iowa 1178, 152 N.W.2d 242 (1967).