Mary H. WALKER, as Guardian of Traino T. McCullum, and Traino T. McCullum, Plaintiffs,

v.

RYAN COMPANIES US, INC., and L.H. Sowles Co., Defendants.

Ryan Companies US, Inc., Third–Party Plaintiff,

and

L.H. Sowles Co., Cross–Claimant,

v.

Ceco Concrete Construction, L.L.C., Third–Party and Cross–Claim Defendant.

L.H. Sowles Co., Third–Party Plaintiff,

v.

L.L.C., Neil Nichol, Midwest Health and Safety Consultants Inc., f/k/a Professional Environmental Services, and John T. Kulacz, Third–Party Defendants.

No. 3–99–CV–90168.

United States District Court, S.D. Iowa, Davenport Division.

June 12, 2001.

Thomas J. Currie, Tom Riley Law Firm, Cedar Rapids, IA, for plaintiff.

James F. Kalkhoff, Dutton Braun Staack & Hellman, Waterloo, IA, for Ryan Companies, defendant.

James E. Shipman, Simmons Perrine, Albright & Ellwood, Cedar Rapids, IA, for L.H. Sowles Co., defendant.

Patrick M. Roby, Elderkin & Pirnie, Cedar Rapids, IA, for Ceco Concrete, defendant.

## ORDER

PRATT, District Judge.

A concrete worker's terrible fall at a construction site in Bettendorf, Iowa in November of 1997 occasioned the present diversity action along with three motions for summary judgment and one motion to stay. In the order the Court will address them, the four fully briefed motions are: (1) Third Party Defendant John Kulacz's Motion for Summary Judgment filed March 2, 2001; (2) Third Party Defendant Ceco Concrete Construction, L.L.C.'s (hereinafter "Ceco") Motion for Summary Judgment on Sowles' Cross–Complaint filed March 22, 2001; (3) Ryan Companies

US, Inc.'s (hereinafter "Ryan") Motion for Judgment filed March 5, 2001; and (4) Ceco's Motion to Stay Proceeding on Third Party Complaint filed March 26, 2001. To address the important questions raised by these motions, the Court held oral argument on June 1, 2001 at the United States Courthouse in Davenport, Iowa. The Court considers these matters fully submitted.

## I. Facts

On November 20, 1997, Traino McCullum, an employee of Ceco, fell three stories through a 16' by 30' floor covering while working on a construction project at the Lady Luck Casino Hotel in Bettendorf, Iowa. The 16' by 30' opening was covered with large sheets of plywood constructed by Ceco, under the direction of its foreman Mr. Kulacz. The accident occurred when one of the plywood sheets that Mr. McCullum was standing on came loose and fell to the ground. Mr. McCullum sustained severe personal injuries. His guardian Mary H. Walker (Plaintiff) sued Ryan (the project's general contractor) and L.H. Sowles Co., Inc. (the project's iron subcontractor). Ceco performed concrete work on the project pursuant to a subcontract—the only contract in this case—with Ryan. The Plaintiff's claim against Ryan and Sowles is a straight claim for negligence properly brought pursuant to this Court's federal diversity jurisdiction. Neither Ryan nor Sowles has moved for judgment against the Plaintiff's claim for negligence.

Soon after the Plaintiff filed her original claim against Ryan and Sowles, Sowles filed a third-party cross complaint against Ceco (the concrete subcontractor) for breach of contract and indemnification. Sowles also filed a third-party complaint against Mr. Kulacz (Ceco's foreman on the project) alleging gross negligence in the construction and maintenance of the 16' by

30′ opening.[1] For its part, Ryan filed a third-party complaint against Ceco for negligence and indemnification pursuant to their subcontract.

The 4 motions before the Court all involve these third-party cross complaints. Mr. Kulacz's motion for summary judgment seeks a ruling that Sowles' cross-complaint in gross negligence fails as a matter of law. Ceco's motion for summary judgment seeks a ruling that Sowles has no rights of indemnification. Ryan's motion for summary judgment seeks a ruling that, pursuant to the Ryan/Ceco subcontract, Ceco will indemnify Ryan for *any and all* damages that may be assessed against Ryan if it is shown that Ceco has some fault in the case. In the final motion the Court will address, Ceco moves for an order staying Ryan's third-party cross complaint against Ceco pending a final determination of fault, if any, to be assessed against Ryan.

The Court will take up additional facts as necessary and will construe them in favor of the non-moving party.

## II. Standard for summary judgment

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. That rule provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). If the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party, then "genuine" issues exist, and a motion for summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

To preclude the entry of summary judgment, the nonmovant must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Continental Grain Co. v. Frank Seitzinger Storage, Inc.,* 837 F.2d 836, 838 (8th Cir.1988). In this case, the parties agree that Iowa law governs the asserted claims. In order to defeat a motion for summary judgment, the nonmoving party must go beyond the pleading and by affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The quantum of proof that the nonmoving party must produce is not precisely measurable, but it must be "enough evidence so that a reasonable jury could return a verdict for the nonmovant." *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. On a motion for summary judgment, the court views all the facts in the light most favorable to the nonmoving party, and gives that party the benefit of all reasonable inferences that can be drawn from the facts. *See United States v. City of Columbia,* 914 F.2d 151, 153 (8th Cir.1990).

## III. Kulacz's motion for summary judgment as to gross negligence

In its Third–Party Complaint, *see* Clerk's # 47 filed 12/8/00, Sowles alleges that Mr. Kulacz was grossly negligent in the following way:

---

1. Sowles also cross-complained against another set of third-party defendants, Neil Nichol and Midwest Health and Safety Consul-

tants, Inc. There is no pending motion as to this third-party complaint.

(a) Prior to Mr. McCullum's injuries, Mr. Kulacz had knowledge that the design and construction of the Hole Cover created perils of injury or death to persons in the position of Mr. McCullum.

(b) Prior to Mr. McCullum's injuries, Mr. Kulacz had knowledge that the design and construction of the Hole Cover made injuries such as those received by Mr. McCullum probable.

(c) Mr. Kulacz consciously failed to correct the design and construction of the Hole Covering to avoid the peril of probable injury.

Second Am. Answer, Cross–Claim and Third–Party Compl. at 6. In his motion for summary judgment, Mr. Kulacz seeks a ruling that Sowles' claim of gross negligence fails as a matter of law.

 Gross negligence is a legal term rooted in Iowa's workers' compensation statute, *see* Iowa Code § 85.20,[2] and defined by Iowa case law. Gross negligence is established if it can be shown that Mr. Kulacz, as a co-employee: (1) had knowledge of the peril to be apprehended; (2) knew that injury was a probable, as opposed to a possible, result of the peril; and (3) consciously failed to avoid the peril. *See Walker v. Mlakar*, 489 N.W.2d 401, 403 (Iowa 1992) (citing *Thompson v. Bohlken*, 312 N.W.2d 501, 505 (Iowa 1981)). To submit gross negligence to a jury, it is not enough to show that the co-employee (here Mr. Kulacz) simply breached a duty of care. In other words, proof of ordinary negligence is insufficient. The Iowa statute demands gross negligence, or "such lack of care as to amount to wanton neglect of the safety of another." Iowa Code § 85.20(2). " '[W]anton' conduct,"

said the Iowa Supreme Court in *Thompson*, "lies somewhere between the mere unreasonable risk of harm in ordinary negligence and intent to harm." *Thompson*, 312 N.W.2d at 504. A recent Iowa Supreme Court opinion restated the standard well: "Gross negligence contemplates an actual realization of imminent danger, coupled with a reckless disregard or lack of concern for the probable consequences of the act." *Johnson v. Farmer*, 537 N.W.2d 770, 773 (Iowa 1995) (citation omitted).

 After thoroughly reviewing the record in a light most favorable to Sowles as the nonmovant, the Court finds that a fact question exists on the question of gross negligence. Given the perils associated with working 3–stories off the ground on and around a large hole covered only by plywood boards, combined with evidence suggesting that Mr. Kulacz knew the hole cover was unsafe prior to Mr. McCullum's fall, a jury could reasonably find that the three essential elements of a gross negligence claim have been met. Some of Sowles' evidence, if accepted by the jury, would include:

● During a walk-through of the construction site prior to the fall, Ryan's safety inspector noticed inadequate supports for the plywood floor covering and recommended to Mr. Kulacz that his men should use "some type of fall protection"; and that if his men were not "tied off" with safety cables, then he should "keep everybody off" of the plywood covering. *See generally* Mark. W. Person Depo. at 31–36.

● Prior to the fall, Mr. Kulacz acknowledged the dangerous condition of the floor cover by telling an iron worker:

---

**2.** Iowa's workers' compensation statute provides the sole and exclusive remedy for an injured employee as against his or her employer or co-employee. The employee may seek remedies outside the statute as against a

co-employee to the extent those injuries are "caused by the [co-]employee's gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another." Iowa Code § 85.20(2).

"Don't walk on that plywood, it ain't safe." Jim Bernloehr Depo. at 39.

- In its 10/3/97 safety inspection report of the construction project, Ryan took Ceco to task for Ceco "[e]mployees, including foreman, not utilizing fall protection." [3]
- Immediately after the accident, Mr. Kulacz took away the fallen piece of plywood in an apparent attempt to hide or destroy this evidence; see Robert Paul Malone Depo. at 50, 54–56. Mr. Kulacz also ordered his men to quickly nail down the remaining pieces of plywood covering the opening on the third floor. As recalled by one witness, "J.T. [Kulacz] was on the ground, and he hollered up to Billy ... 'Hey, get that stuff nailed,' and them guys were running around.... they all ran over and started nailing." Jim Bernloehr Depo. at 82–83.

The Court recognizes that construction work, especially work performed some distance from the ground, is by nature a dangerous enterprise, and proof of ordinary negligent conduct will be insufficient to establish the tough standards of gross negligence. The court in *Woodruff Constr. Co. v. Mains*, 406 N.W.2d 787, 788 (Iowa 1987), for example, acknowledged the typical hazards that confront such workers, including occasional "slips, trips, and falls." In that case, a worker fell through a hole in a roof he was patching and sustained serious personal injuries. The conduct of the worker's "hard-driving" and "verbally abusive" supervisor was insufficient, as a matter of law, to make out a case of gross negligence under § 85.20. Chief Justice McGiverin's opinion in *Walker v. Mlakar, supra*, is another good expression of the Iowa courts' reluctance to

find co-employee liability in admittedly dangerous, industrial working conditions absent some showing that the co-employee actually knew of the perilous condition and yet allowed work to proceed. *See Walker*, 489 N.W.2d at 405–06.

Here, although it's a close question, the strict standards of gross negligence are met. First, the Court notes that Sowles has not rested its claim against Mr. Kulacz on evidence of ordinary negligence. In other words, this case is not simply about a "slip, trip, or fall" that occurred on a hazardous construction site. Rather, as shown above, the evidence if believed suggests that Mr. Kulacz knew of certain dangers (namely, the peril of falling down 3 stories through a weakly supported plywood hole covering), that these dangers were probable, as opposed to simply possible, and that he consciously failed to avoid them. Mr. Kulacz asserts that he did not know of the platform's weak condition prior to the accident. Among other evidence, he points to four safety inspections performed by Ryan that did not disclose dangers in the area of the hole cover. Mr. Kulacz also takes issue with the allegation that he tried to destroy or tamper with evidence immediately following Mr. McCullum's fall. Given these unresolved factual issues, granting judgment in favor of Mr. Kulacz on this record would not be appropriate. *See Alden v. Genie Indus.*, 475 N.W.2d 1 (Iowa 1991) (supervisor ordered worker to paint a flagpole in an unsafe way; summary judgment for defendant on gross negligence reversed because plaintiff's evidence showed that supervisor was told about the unsafe condition prior to his order); *Swanson v. McGraw*, 447 N.W.2d 541 (Iowa 1989) (district court

---

**3.** The term "fall protection" appears to be an industry term of art embracing the proper design and construction of floor hole covers like the one at issue in this case. *See* Ceco's

"Fall Protection Training Certificate," found at L.H. Sowles' App. in Supp. of Resistance to John T. Kulacz's Mot. for Summ. J. at Ex. 2 (hereinafter "Ex. 2").

erred in directing a verdict in favor of defendant on gross negligence where the evidence showed the supervisor knew the protective suit was defective and yet told the employee to continue using it nonetheless); *Larson v. Massey–Ferguson, Inc.*, 328 N.W.2d 343 (Iowa Ct.App.1982) (plaintiff's verdict affirmed in gross negligence case where the evidence showed that co-employee ordered plaintiff to work with a fence post hole-digger known to be dangerous). In light of these factual disputes, Third–Party Defendant Kulacz's motion for summary judgment will therefore be denied.

### IV. Ceco's motion for summary judgment on Sowles' cross-complaint

As noted above, in its third-party complaint Sowles asserts indemnification as against Ceco. Sowles bases its claim of indemnification on third-party beneficiary principles. Sowles asserts that the indemnity provision in the Ryan/Ceco subcontract runs in Sowles' favor. In its motion for summary judgment, Ceco responds by asserting that the indemnity provision of the Ryan/Ceco subcontract makes no reference to Sowles, either by name or in its capacity as a separate subcontractor to Ryan. Therefore, absent some express contractual relationship, Ceco seeks a ruling that Sowles is entitled to no indemnification rights.

 The law regarding the interpretation of indemnification agreements is set forth in *Martin & Pitz Associates Inc. v. Hudson Constr. Services Inc.*, 602 N.W.2d 805 (Iowa 1999):

> The question of whether [a party is] liable for indemnity is a matter for the court to determine as a matter of law.... Ordinarily, indemnifying agreements will be enforced according to their terms, as in any other contract case.... [A]n indemnity contract is strictly construed against the drafter, in this case [Ceco] ... Further, a party will not be indemnified for its own negligence unless the agreement provides for it in "clear and unequivocal" language.

*Id.* at 808–09 (internal citations and some quotation marks omitted). In construing the provisions of a contract, the Court is "guided by the cardinal principle that the parties' intent controls, and, except in cases of ambiguity, that intent is determined by what the contract itself says." *Huber v. Hovey*, 501 N.W.2d 53, 56 (Iowa1993) (citation omitted).

 Article 6 of the Ryan/Ceco subcontract provides the relevant indemnity provision. Article 6 provides that Ceco, defined as "the Subcontractor" (with a capital "S"), agrees to "save harmless the Contractor [Ryan] and *all other subcontractors* from any and all [actual][4] losses or damage occasioned by the failure of the Subcontractor [Ceco] to carry out the provisions of this Subcontract, unless such failure results from causes beyond the control of the Subcontractor." (Emphasis added). This language makes clear that Ceco agreed to indemnify "other subcontractors" like Sowles from any losses "occasioned by" Ceco's own shortcomings that were not of Ceco's own making. In light of the statutory rules of construction stated above, a plain reading of the subcontract provides that Ceco will indemnify Sowles, not for Sowles' own negligence (because that would be "beyond the control" of Ceco), but rather only to the extent of Ceco's own liability. Thus, although Sowles is not specifically named in

---

4. Ceco added the word "actual" to the subcontract. *See* Ceco's letter of 9/17/97, attached to Ceco's Ex. 2.

the subcontract, the subcontract clearly directed benefits running in its favor. The provision granting limited indemnification rights to a third-party subcontractor like Sowles does not appear accidental, as similar clauses favoring third-parties occur throughout the subcontract. *See* Article 7.2 as amended ("The Subcontractor shall indemnify and hold the . . . Architect, [its] agents, consultants and employees harmless from and against all claims, losses, costs and damages . . . pertaining to the performance of the Subcontract and involving personal injury. . . ."); Article 19 ("[Ceco agrees to] save . . . other subcontractors harmless from loss, cost or expense on account of [infringement of patent rights] by the Subcontractor."). In other words, the parties clearly intended to grant limited rights to un-named third party subcontractors like Sowles. In light of the clear language of the Ryan/Ceco subcontract, the Court will deny Ceco's motion for summary judgment.

## V. Ryan's motion for summary judgment on its third-party claim against Ceco

■ Pursuant to the indemnity provisions of its subcontract with Ceco, Ryan moves for a judgment in its favor as against Ceco. If the Plaintiff recovers from Ryan in the primary lawsuit, then Ryan seeks complete indemnification from Ceco if it is shown that Ceco has any fault in the matter. Although Ceco concedes that the subcontract contains an indemnity clause expressly in favor of Ryan as the general contractor, Ceco believes that Ryan's indemnity rights are limited to the extent of Ceco's own negligence.

With respect to Ryan's rights to indemnification, two provisions of the subcontract are involved. The first provision is Article 6, the same Article 6 noted above. That provision states: ["Ceco agrees to] save harmless the Contractor [Ryan] . . . from any and all [actual] losses or damage occasioned by the failure of the Subcontractor [Ceco] to carry out the provisions of this Subcontract, unless such failure results from causes beyond the control of the Subcontractor."

The second indemnity provision is set forth at Article 7.2 as amended. That article provides: "The Subcontractor shall indemnify and hold the Contractor . . . [its] agents, consultants and employees harmless from and against all claims, losses, costs and damages . . . pertaining to the performance of the Subcontract and involving personal injury . . . *but only to the extent caused in whole or in part by the negligent acts or omissions o[f] the Subcontractor* [.]" (Emphasis added).

Construing together these provisions, and in light of this Court's earlier conclusions on construction at Part IV of this Order, the Court finds that Ceco agreed to indemnify Ryan only to the extent of Ceco's own liability in the matter. That is the position advanced by Ceco in its brief, and that is the position supported by the language of the subcontract read in its entirety. Accordingly, Ryan's motion for summary judgment will be denied.

## VI. Ceco's motion to stay proceedings on Ryan's third-party complaint

■ Ryan asserts in its third-party complaint against Ceco that Ceco is bound by the parties' subcontract to defend and indemnify Ryan should Ryan be hit with a judgment. Aware that it can only look to Ceco for indemnification if Ceco is found negligent, Ryan's third-party complaint also alleges that Mr. McCullum's injuries were caused by Ceco's negligence. In the instant motion, Ceco simply asks the Court to stay Ryan's third-party complaint until a jury returns a judgment against Ryan. Ceco argues that "[o]nce the matter [of Ryan's fault] has been resolved and Ryan

has paid the judgment against it, if any, [then] Ryan's claim against Ceco can proceed, with a jury deciding what percentage of the fault assessed to Ryan was for Ryan's conduct, and what percentage, if any, was in fact Ceco's for which Ryan was held responsible."

As the indemnitor to both Sowles and Ryan, Ceco effectively wants two trials. In one trial, the jury will decide the merits of the negligence and gross negligence claims, as well as the indemnity issues raised in Sowles' cross complaint against Ceco. In a second trial, Ceco would separately defend against Ryan's indemnification action.

Whether Ryan's claim against Ceco is tried all at once or separately, at some point, the question of Ceco's negligence toward Mr. McCullum will have to be litigated. The Iowa Court of Appeals in *IBP, Inc. v. DCS Sanitation Management Services, Inc.*, 498 N.W.2d 425, 428 (Iowa Ct.App.1993) recognized that this inquiry involving an employer's negligence toward one of its injured employees is in some tension with the "spirit of the workers' compensation legislation." Nevertheless, the Court in *IBP* expressly stated that this question must be answered on behalf of a party like Ryan who stands to receives indemnification from an employer covered by workers compensation statute. Ryan must have the opportunity to litigate the question of Ceco's negligence. *See IBP*, 498 N.W.2d at 427–28 ("[T]he presence or absence of negligence on DCS's part toward [one of its employees] has never been litigated. * * * IBP should have the opportunity to litigate these issues on which there is a factual dispute.").

The question raised by the instant motion is one of format. The Court has not found any authority mandating there be separate trials, as urged by Ceco. The only requirement is that Ryan, as a precondi-

tion to indemnification, be given an "opportunity" to prove up Ceco's negligence. *See IBP, supra.* True, there were two separate proceedings in the *IBP* case: the first was a trial on the merits of plaintiff's tort claim against IBP; the second was IBP's motion for summary judgment to sort out the indemnity issues. That there were two separate proceedings in that case was a function of party choice, not judicial directive. This Court does not read the *IBP* opinion to preclude the resolution of all these issues in a single trial.

At this time, the Court believes that proceeding with Ryan's claim against Ceco in a single trial serves important interests of judicial economy. So far as the Court can tell, all the evidence, testimony, and witnesses to be used at trial would be the same in any subsequent litigation between Ryan and Ceco. Moreover, it makes little sense to stay the Ryan/Ceco litigation where Ceco will still be heavily involved in the Sowles/Ceco litigation and indirectly in the Sowles/Kulacz controversy. Should there be further developments in this case as the parties prepare for trial, the Court of course reserves the right to revisit the question of Ceco's motion for a stay. For now, the Court holds that Ceco's motion for a stay will be denied.

## VII. Conclusion

In light of the foregoing, the Court enters the following Order:

(1) Kulacz's motion for summary judgment as to gross negligence (Clerk's # 56) is **DENIED;**

(2) Ceco's motion for summary judgment on Sowles' third-party complaint (Clerk's # 66) is **DENIED;**

(3) Ryan's motion for summary judgment on its third-party complaint against Ceco (Clerk's # 59) is **DENIED;**

(4) Ceco's motion to stay proceedings on Ryan's third-party complaint (Clerk's # 70) is **DENIED.**

**IT IS SO ORDERED.**