James EISCHEID, Plaintiff,

v.

DOVER CONSTRUCTION, INC.,
and Woods Masonry, Inc.,
Defendants,

and

Dover Construction, Inc., Third–
Party Plaintiff,

v.

Woods Masonry, Inc., Third–Party
Defendant and Third–Party
Plaintiff,

v.

DeLoss Construction, Inc., Third–
Party Defendant.

No. C 00–4100–MWB.

United States District Court,
N.D. Iowa,
Western Division.

June 2, 2003.

**1048**

Stephen F. Avery, Cornwall, Avery, Bjornstad, Scott, Spencer, IA, for Deloss Construction Inc.

Matthew T. E. Early, Rawlings, Neiland, Probasco, Killinger, Ellwanger, Jacobs, et al., Daniel L. Hartnett, Crary–Huff–Inkster–Hecht–Sheehan–Ringenberg–Hartnett–Storm, Sioux City, IA, for Woods Masonry, Inc.

John C. Gray, Heidman, Redmond, Fredregill, Patterson, Plaza, Dykstra & Prahl, Paul D. Lundberg, Lundberg Law Firm, Sioux City, IA, for Dover Construction, Inc.

Dean F. Suing, Todd W. Weidemann, Katskee, Henatsch & Suing, Omaha, NE, N. Richard Willia, Willia, Stahle & Andreasen, Sioux City, IA, for Otis Koglin Wilson Architects, Inc. and James Eischeid.

**MEMORANDUM OPINION AND ORDER REGARDING SUMMARY JUDGMENT MOTIONS INVOLVING CLAIMS BY AND AGAINST WOODS MASONRY**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION ............................................1049

  A. *General Factual Background* ........................................1049
  B. *Procedural Background* ...........................................1049

II. *STANDARDS FOR SUMMARY JUDGMENT* ...............................1050

III. *WOODS'S MOTION FOR SUMMARY JUDGMENT* ........................1051
  A. *Eischeid's "Direct" Claim Against Woods* ..............................1051
  B. *Dover's Third–Party Claims Against Woods* ...........................1052
    1. *Pertinent factual context* .........................................1052
    2. *Arguments of the parties* .........................................1053
    3. *Analysis* ........................................................1054
      a. *Negligence and contribution claims* ............................1054
      b. *Breach–of–contract claims* ....................................1054
      c. *Indemnity claims* ...........................................1055
        i. *Scope and interpretation of indemnity agreements* ...........1055
        ii. *The indemnity provision at issue* .........................1056
        iii. *Is Dover's indemnity claim "unenforceable"?* ...............1056
        iv. *Procedure to determine extent of indemnity* ................1058

IV. *DELOSS'S MOTION FOR SUMMARY JUDGMENT* ........................1059
  A. *Pertinent Factual Background* ......................................1059
  B. *Arguments Of The Parties* .........................................1059
  C. *Analysis* ........................................................1060

V. *CONCLUSION* ....................................................1061

## I. INTRODUCTION

### A. General Factual Background

In this lawsuit, plaintiff James Eischeid asserts claims arising from an accident at a construction site on March 17, 1999. Eischeid was working at the site as an employee of Woods Masonry, Inc. (Woods), which was, in turn, a subcontractor for masonry work on the construction project for the general contractor, Dover Construction, Inc. (Dover). Apparently because the construction project was behind schedule, Dover had also hired DeLoss Construction, Inc., to grout masonry walls as Woods completed the block work. Eischeid was seriously injured when an unbraced, ungrouted wall under construction on the project collapsed, apparently under the force of gusty winds.

### B. Procedural Background

Eischeid filed this lawsuit on September 15, 2000, asserting claims of negligence and failure to maintain a safe workplace against Dover. Dover filed a third-party complaint against Woods on November 3, 2000, then an amended third-party complaint on December 20, 2000, asserting that Woods's negligence caused Eischeid's injuries; that Woods breached the subcontract, by failing to obtain workers' compensation insurance, failing to comply with the plans and specifications, and failing to comply with OSHA safety regulations; and that Woods was required by the subcontract to indemnify Dover for any recovery Eischeid might receive against Dover. Eischeid eventually amended his complaint on March 19, 2001, to assert his own "direct" negligence claim against Woods, as well as a negligent design claim against the architects for the construction project, Otis, Koglin, Wilson Architects, Inc. On January 22, 2003, Eischeid dismissed his claims against the architects, leaving Dover and Woods as the only "direct" defendants. On August 7, 2002, Woods filed its own third-party complaint against DeLoss Construction, Inc., in which Woods alleges that DeLoss's negligence caused all or part of Eischeid's damages.

This matter is now before the court on two motions for summary judgment. First, on March 25, 2003, Woods moved for summary judgment on Eischeid's "direct" negligence claim against Woods and on Dover's third-party claims of negligence, breach of contract, and indemnity against Woods asserting, in essence, that the "exclusive remedy" provisions of the Iowa Workers' Compensation Act, IOWA CODE CH. 668, bar both Eischeid's and Dover's claims. Dover resisted Woods's motion for summary judgment on April 11, 2003, but Eischeid has never responded to the motion. The second motion for summary judgment now before the court is third-party defendant DeLoss's April 25, 2003, motion, in which DeLoss contends that Woods has conceded that DeLoss did nothing wrong and is not at fault for the injuries to Eischeid. Woods resisted DeLoss's motion for summary judgment on May 15, 2003. These matters are now fully submitted and the court will consider them in turn. However, the court must first consider the standards applicable to these summary judgment motions.

## II. STANDARDS FOR SUMMARY JUDGMENT

As this court has explained on a number of occasions, applying the standards of Rule 56 of the Federal Rules of Civil Procedure providing for summary judgment, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Quick,* 90 F.3d at 1377 (same). Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir.1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston v. NME Hosps., Inc.,* 133 F.3d 1104, 1107 (8th Cir.1998); *Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). When a moving party has carried its burden under Rule 56(c), the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v. Crane Co.,* 122 F.3d 559, 562 (8th Cir.1997), *cert. denied,* 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach v. Sears,* 49 F.3d 1324, 1325 (8th Cir.1995). An issue of material fact is "genuine" if it has a real basis in the record. *Hartnagel,* 953 F.2d at 394 (citing *Matsushita Elec. Indus. Co.,* 475 U.S. at 586–87, 106 S.Ct. 1348). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," *i.e.,* are "material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law."

*Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir.1997). Ultimately, the necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir.1994). The court will apply these standards to both of the pending motions for summary judgment.

### III. WOODS'S MOTION FOR SUMMARY JUDGMENT

As mentioned above, the first motion for summary judgment before the court is Woods's March 25, 2003, motion for summary judgment on Eischeid's "direct" negligence claim against Woods and on Dover's third-party claims of negligence, breach of contract, and indemnity against Woods. Although Dover resisted Woods's motion for summary judgment on April 11, 2003, Eischeid has never responded to the motion.

#### A. Eischeid's "Direct" Claim Against Woods

The court could simply grant that portion of Woods's motion for summary judgment on Eischeid's negligence claim against Woods on the ground that Eischeid has failed to resist the motion. *See* N.D. IA. L.R. 56.1(c) (a summary judgment motion to which no timely response is filed may be granted without prior notice from the court). However, the court prefers to address dispositive motions on the merits rather than on procedural grounds, where possible. The court therefore considers some brief analysis of Woods's motion for summary judgment on Eischeid's "direct" negligence claim to be appropriate.

The Iowa Workers' Compensation Act is codified at IOWA CODE CH. 85. As the Iowa Supreme Court recently explained,

> Chapter 85 provides a "zone of protection" in workers' compensation making an employer responsible for workers' compensation benefits only for "any and all personal injuries sustained by an employee arising out of and in the course of employment...." [IOWA CODE] § 85.3(1); *Waterhouse Water Conditioning, Inc. v. Waterhouse*, 561 N.W.2d 55, 57 (Iowa 1997); *Frost v. S.S. Kresge Co.*, 299 N.W.2d 646, 648 (Iowa 1980). In general, an injured employee's right to workers' compensation is the employee's exclusive remedy against the employer. *Nelson v. Winnebago Indus., Inc.*, 619 N.W.2d 385, 388 (Iowa 2000); *Bailey v. Batchelder*, 576 N.W.2d 334, 337 (Iowa 1998); IOWA CODE §§ 85.3(1), 85.20.

*Thayer v. State*, 653 N.W.2d 595, 599 (Iowa 2002). However, as the Iowa Supreme Court also explained, "Iowa Code section 85.20 does not bar a negligence suit against an employer unless the action arose while the employee was acting within the scope of her employment and the injury arose out of and in the course of her employment." *Id.* (citing Iowa Code § 85.20).

■ In this case, Woods contends that there is no dispute that it was Eischeid's employer at the time of his injuries, that his action arose from injuries sustained while he was acting within the scope of his employment, and that his injuries arose out of and in the course of his employment. *See id.* Indeed, Woods points out that Eischeid alleged as much in his amended complaint. *See* Plaintiff's Amended Complaint, ¶ 4. Eischeid has not disputed this contention in response to Woods's motion for summary judgment; therefore, Woods is entitled to summary judgment on this point. *See Celotex Corp.*, 477 U.S. at 323,

106 S.Ct. 2548 (if a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law"); *In re TMJ Implants Prod. Liab. Litig.*, 113 F.3d at 1492.

In an abundance of caution, Woods also addresses the exception to the exclusive remedy provided by the Iowa Workers' Compensation Act, found in IOWA CODE § 87.21. Woods contends that the authorization in § 87.21 for an action at law for damages by an employee against an employer "who has failed to insure the employer's liability [pursuant to the Iowa Workers' Compensation Act]," *see* IOWA CODE § 87.21, does not apply here, because this court has determined, in a separate action, that Woods does have workers' compensation coverage applicable to Eischeid's claims. *See Woods Masonry, Inc., v. Monumental Gen. Cas. Ins. Co.*, 198 F.Supp.2d 1016 (N.D.Iowa 2002) (Memorandum Opinion and Order Regarding the Parties' Cross-motions for Summary Judgment).[1] The court agrees with Woods's contentions regarding both the applicable law and the undisputed facts from the record. Eischeid has not—and cannot—contend that his action against Woods falls within the authorization of IOWA CODE § 87.21, where this court has determined that Woods had workers' compensation insurance applicable to Eischeid's claims.

Therefore, that part of Woods's March 25, 2003, motion for summary judgment seeking summary judgment in its favor on

Eischeid's "direct" negligence claim against Woods will be granted.

## B. Dover's Third–Party Claims Against Woods

Woods's motion for summary judgment on Dover's third-party claims against Woods, also premised on the exclusive remedy provisions of the Iowa Workers' Compensation Act, requires somewhat more detailed analysis. Therefore, the court begins with an examination of the specific factual background to Dover's claims, then turns to an analysis of Woods's motion for summary judgment on those claims.

### 1. Pertinent factual context

A survey of the additional facts pertinent to Dover's claims against Woods begins with the relationship between these two parties.[2] Dover was the general contractor on the Pine Tree Plaza construction project in Spencer, Iowa. Dover and Woods executed a Subcontract Agreement on October 16, 1998, pursuant to which Woods was to supply masonry labor, to do all work in accordance with plans and specifications prepared by Otis, and to comply with all applicable OSHA regulations.

The Subcontract Agreement also included the following indemnity provision:

12. HOLD HARMLESS AGREEMENT

The Subcontractor will and does agree to defend, indemnify, save and hold harmless, Contractor, the Owners, the architects, their agents, employees and

---

**1.** Indeed, this ruling may well explain why Eischeid has never resisted Woods's motion for summary judgment on his "direct" negligence claim against Woods in the present action.

**2.** As noted above, whether or not a party is entitled to summary judgment ordinarily turns on whether or not there are genuine

issues of material fact for trial. *See, e.g., Quick,* 90 F.3d at 1376–77. Nevertheless, the court will not attempt here a comprehensive review of the undisputed and disputed facts in the record. Rather, the court will present here only sufficient factual background to put in context the parties' arguments for and against summary judgment on Dover's third-party claims against Woods.

assigns, to the fullest extent permitted by law, of and from all claims, loss, damages, injury causes and actions, suits of whatsoever nature (except only any thereof resulting from the negligent act or omission of any or all of the indemnities [sic]), for personal injury, including death resulting therefrom, and for property damage alleged to arise out of, or any conditions, of the work performed under this Contract, whether by this Subcontractor or by any sub-Subcontractor of this Subcontractor, and whether any such claim, cause of action, or suit is asserted against Contractor, the owners, and/or the architects, their agents, employees and assigns or this Subcontractor severally, jointly, and/or jointly and severally.

Subcontractor will and hereby agrees to indemnify and hold harmless, Contractor, the owners, the architects, their agents, employees, and assigns of and from all costs of investigation, adjustment, attorney's fees, court costs, administrative costs, and other related items or expense arising out of any claim, cause of action or suit of the kind and nature set forth in the preceding paragraph.

Woods's Statement Of Undisputed Facts, Exhibit A, Subcontract Agreement, ¶ 12.

The Subcontract Agreement also required Woods to carry general liability insurance and workers' compensation insurance. It is undisputed that Woods carried both kinds of insurance and, as mentioned above, this court has ruled, in a separate action, that Woods's workers' compensation insurance is applicable to Eischeid's claims arising from the injuries he suffered when the wall collapsed on March 17, 1999. *See Woods Masonry, Inc., v. Monumental Gen. Cas. Ins. Co.,* 198 F.Supp.2d 1016 (N.D.Iowa 2002) (Memorandum Opinion and Order Regarding the Parties' Cross-motions for Summary Judgment).

### 2. *Arguments of the parties*

In its motion for summary judgment on Dover's third-party claims against it, Woods argues, generally, that the exclusive remedy provisions of the Iowa Workers' Compensation Act bar Dover's third-party claims, just as they barred Eischeid's "direct" negligence claim against Woods. More specifically, Woods argues, first, that it cannot be apportioned any "fault" under the Iowa Comparative Fault Act, because its liability arises from the Workers' Compensation Act, not from any "fault" within the meaning of the Comparative Fault Act, which defines "fault" as acts or omissions that are negligent or reckless or that subject a person to strict liability. Woods argues that the Comparative Fault Act precludes sharing of "fault" unless the plaintiff has a viable claim against the party in question. Second, Woods argues that the exclusive remedy provisions of the Workers' Compensation Act bar any claim for contribution against Woods by Dover, because there is no "common liability" between them, where Woods's liability to Eischeid, if any, is pursuant to the Workers' Compensation Act, but Dovers' liability to Eischeid, if any, is pursuant to common-law negligence. Third, Woods argues that Dover's claim for indemnity, in its entirety, is "unenforceable," because Dover seeks indemnity for its own negligence, as well as Woods's negligence, but the Subcontract Agreement expressly excludes indemnity for Dover's negligence. For this argument, Woods relies on *Trushcheff v. Abell–Howe Co.,* 239 N.W.2d 116, 119 (Iowa 1976). Finally, Woods argues that the court's determination that it has workers' compensation insurance coverage applicable to Eischeid's claims destroys the basis for Dover's breach-of-contract claim premised on failure to have such insurance.

In response, Dover concedes that its "negligence" claim against Woods is in essence a "contribution" claim that is barred by the exclusive remedy provisions of the Iowa Workers' Compensation Act. Dover also withdraws its claim of breach of contract based on Woods's alleged failure to procure workers' compensation insurance coverage. However, Dover contends that it is entitled to—or that there are genuine issues of material fact as to whether or not it is entitled to—indemnity pursuant to either an express contract or an implied contract. As to its express indemnity claim, Dover points to the express "hold harmless" provisions of the Subcontract Agreement. Dover contends that Woods's argument that Woods can't be required to indemnify Dover for Woods's negligence, because the subcontract does not require Woods to indemnify Dover for *Dover's* negligence, is without merit. First, Dover points out that the indemnity provisions of the contract provide that Woods must indemnify Dover "to the fullest extent permitted by law," and that the scope of Woods's obligation for its undisputed negligence can best be determined in one lawsuit by allocation of "fault" to Woods. Dover relies on the unpublished decision of the Iowa Court of Appeals in *Sward v. Nelson Construction, Inc.*, 2003 WL 118206 (Iowa Ct.App. Jan.15, 2003), for the propriety of determining indemnity from a jury's apportionment of "fault." Second, Dover points out that, while the fact of Woods's negligence is undisputed, based on admissions of its president, whether or not Dover was negligent has yet to be determined. As to an implied contract for indemnity, Dover points to the contractual provisions requiring compliance with both OSHA regulations and the specifications and plans for the project as implying duties to indemnify for breach of those contractual obligations. Dover also contends that there are genuine issues of material fact as to whether or not Woods

breached the contract provisions requiring adherence to the plans and specifications and the OSHA regulations.

### 3. Analysis

#### a. Negligence and contribution claims

■ Woods seeks, and Dover concedes that Woods is entitled to, summary judgment in its favor on Dover's negligence and contribution claims, because such claims are barred by the exclusive remedy provisions of the Iowa Workers' Compensation Act. The court agrees that summary judgment in Woods's favor is appropriate on these claims. In *McDonald v. Delhi Sav. Bank*, 440 N.W.2d 839 (Iowa 1989), the Iowa Supreme Court explained the applicable principles:

> Contribution is not available when the party from whom it is sought has a special defense against an action by the injured party. *Iowa Power & Light Co. v. Abild Constr. Co.*, 259 Iowa 314, 321, 144 N.W.2d 303, 308 (1966). Thus, we have held that an employer's special defense under the worker's compensation act immunizes the employer from contribution to a third party who was responsible for an employee's injuries. *Id.*

*McDonald*, 440 N.W.2d at 841. These principles apply here and require that summary judgment in Woods's favor be granted on Dover's claims of negligence and contribution.

#### b. Breach-of-contract claims

In the face of Woods's motion for summary judgment, Dover also withdraws its claim of breach of contract based on the purported failure of Woods to procure workers' compensation insurance coverage. The court agrees that it is undisputed that there is now no factual basis for this part of Dover's breach-of-contract claim.

■ However, Dover also contends that there are genuine issues of material fact as to the remainder of its breach-of-contract claim, that is, the portion of the claim alleging breach by Woods of the provisions of the Subcontractor Agreement that required Woods to comply with the plans and specifications for the construction project and with OSHA safety regulations. The court finds that Woods did not ever put these portions of Dover's breach-of-contract claim at issue by informing the court that it was attacking them or by "identifying those portions of the record which show lack of a genuine issue" on these portions of Dover's breach-of-contract claim. *See Hartnagel,* 953 F.2d at 395 (movant's burden). In the alternative, to the extent that Woods's motion for summary judgment can be read to challenge these portions of Dover's breach-of-contract claim, the motion is denied, because Dover has generated genuine issues of material fact on them by citing record evidence sufficient to sustain those claims. *See* FED. R. CIV. P. 56(e) (the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial"); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Therefore, except to the extent that Dover has conceded that it is appropriate, summary judgment on Dover's breach-of-contract claim against Woods will be denied.

### c. Indemnity claims

■ *i. Scope and interpretation of indemnity agreements.* The real "fighting issue" on Woods's motion for summary judgment on Dover's third-party claims, however, is the question of whether or not Dover can pursue its indemnity claims in the face of the exclusive remedy provisions of the Iowa Workers' Compensation Act. As to that issue, the Iowa Supreme Court recently explained the following applicable principles:

> [W]orkers' compensation does not function as a complete bar to suit against an employer by a third party where the employer has breached an independent duty to the third party. *Weggen v. Elwell–Parker Elec. Co.,* 510 F.Supp. 252, 254 (D.C.Iowa 1981); *Herter v. Ringland–Johnson–Crowley Co.,* 492 N.W.2d 672, 673 (Iowa 1992). There are several different grounds upon which a claimant may seek indemnity, including express contract. *See Iowa Power & Light Co. v. Abild Constr. Co.,* 259 Iowa 314, 322–23, 144 N.W.2d 303, 308 (1966) (citations omitted). "[C]ontractual indemnity is not disfavored and ordinarily will be enforced between the parties according to its terms." *Pirelli–Armstrong Tire Corp. v. Midwest–Werner & Pfleiderer, Inc.,* 540 N.W.2d 647, 649 (Iowa 1995).

*McComas–Lacina Constr. Co. v. Able Constructors,* 641 N.W.2d 841, 844 (Iowa 2002). In light of these principles, the Iowa Supreme Court concluded in *McComas–Lacina Construction* that McComas, the general contractor, was entitled to recover against Able, the subcontractor and employer of the injured plaintiff, "if the parties included an enforceable contractual indemnity provision in the subcontract," because the indemnity provision provided the necessary "independent duty" to escape the bar imposed by the exclusive remedy provisions of the Iowa Workers' Compensation Act. *Id.* The same is true here.

As the Iowa Supreme Court also explained in *McComas–Lacina Construction,*

> "Ordinarily, indemnifying agreements will be enforced according to their terms, as in any other contract case." *Walker v. Ryan Cos. US, Inc.,* 149 F.Supp.2d 849, 855 (S.D.Iowa 2001) (quoting *Martin [& Pitz Assocs., Inc. v.*

*Hudson Constr. Servs., Inc.],* 602 N.W.2d [805,] 808–09 [(Iowa 1999)]). Absent ambiguity in the agreement, we are bound by the language expressed in the contract. *Id.* (citing *Huber v. Hovey,* 501 N.W.2d 53, 56 (Iowa 1993)). *McComas–Lacina Constr. Co.,* 641 N.W.2d at 845. The court explained, further, that an indemnity provision allowing a party to seek indemnity for *its own* negligence is only enforceable if it is "clear and unequivocal." *Id.* (citing *Martin & Pitz Assocs., Inc. v. Hudson Constr. Servs., Inc.,* 602 N.W.2d 805, 809 (Iowa 1999)).

**ii. The indemnity provision at issue.** Here, the indemnity or "hold harmless" provision of the Subcontract Agreement expressly provides that Woods will indemnify Dover "to the fullest extent permitted by law, of and from all claims ... for personal injury ... alleged to arise out of, or any conditions, of the work performed under this Contract, whether by this Subcontractor or by any sub-Subcontractor of this Subcontractor...." Woods's Statement Of Undisputed Facts, Exhibit A, Subcontract Agreement, ¶ 12. The court concludes that there is no ambiguity that this provision applies to Eischeid's claims against Dover to the extent that they are attributable to *Woods's* negligence. *McComas–Lacina Constr. Co.,* 641 N.W.2d at 845 ("Absent ambiguity in the agreement, we are bound by the language expressed in the contract."). However, this provision expressly excludes or excepts from indemnity claims that "resul[t] from the negligent act or omission of any or all of the indemnities [sic]." Subcontract Agreement, ¶ 12. Thus, the express indemnity provision does not provide for indemnity for a claim based on *Dover's* negligence. *McComas–Lacina Constr. Co.,* 641 N.W.2d at 845 ("Absent ambiguity in the agreement, we are bound by the language expressed in the contract.").

**iii. Is Dover's indemnity claim "unenforceable"?** Woods contends that, for the very reason that the indemnity provision at issue does not expressly provide for indemnity for *Dover's* negligence, Dover's *entire* indemnity claim is "unenforceable," because Dover pleads a claim for indemnity for *"all sums* Dover would or may be required to pay to [Eischeid] or expend in the defense and resolution of the claims of [Eischeid]." *See* First Amended Third-Party Complaint, Prayer. This claim, Woods contends, and the court agrees, literally prays for indemnity for claims for *Dover's own* negligence as well as for *Woods's* negligence. Woods relies on *Trushcheff v. Abell–Howe Co.,* 239 N.W.2d 116, 119 (Iowa 1976), for the proposition that "[w]ithout clear and unequivocal language indicating the subcontractor was liable to indemnify the contractor even for the contractor's own negligence, ... there was no cognizable cause of action." Woods's Memorandum Of Authorities In Support Of Its Motion For Summary Judgment, 10.

This court concludes, however, that *Trushcheff* cannot properly be read for the proposition that a third party has no indemnity claim *at all* unless the contract unequivocally provides for indemnity for that third party's own negligence. First, as the Iowa Supreme Court explained in *McComas–Lacina Construction,*

> *Trus[h]cheff* did not involve any evidence of negligence on the part of the subcontractor. Rather, there was no dispute the only negligent party in *Trus[h]cheff* was the contractor. Consequently, we did not address whether the plaintiff's employer was required by contract to indemnify the contractor for the employer/subcontractor's negligence.

*McComas–Lacina Constr. Co.,* 641 N.W.2d at 845–46. For this reason, the Iowa Supreme Court in *McComas–Lacina Con-*

*struction* rejected the subcontractor's claim that *Trushcheff* necessarily barred the contractor's indemnity claim. *Id.* at 846. The Iowa Supreme Court explained,

> Though both Able [the subcontractor/employer] and the district court relied significantly on this case, *Trushcheff* is not dispositive of the issues before us. Unlike the contractor in *Trushcheff,* McComas [the general contractor] does not seek indemnity from Able based on McComas' own negligence. If this were the case, our prior case law suggests McComas would be precluded from seeking contractual indemnity because the language of paragraph ten of the subcontract does not clearly and [un-]equivocally provide for indemnity under those circumstances. *See Trushcheff,* 239 N.W.2d at 134. However, this is not the situation we have before us because McComas seeks indemnity based on Able's negligence—a circumstance explicitly addressed in paragraph eleven of the subcontract. Because McComas seeks indemnity purely for Able's acts of negligence, paragraph eleven may apply to this case. Since the scope of this provision addresses any loss or damage arising through Able's conduct, we must determine whether there was a genuine issue of material fact regarding whether McComas suffered any loss as a result of Able's negligence.

*McComas–Lacina Constr. Co.,* 641 N.W.2d at 846.

Similarly, here, the situation is not the same as the one in *Trushcheff,* because Dover's third-party indemnity claim can be read to assert indemnity *for Woods's negligence,* as well as for *Dover's negligence.* Moreover, because the indemnity provision specifically excludes or excepts indemnity for Dover's negligence, *see* Woods's Statement Of Undisputed Facts, Exhibit A, Subcontract Agreement, ¶ 12, the indemnity provision provides for indemnity "to the fullest extent permitted by law," *id.,* but

"the law," as embodied in *Trushcheff* and *McComas–Lacina Construction* does not permit an indemnity claim for the indemnitee's own negligence in the absence of a "clear and unequivocal agreement" that is not present here, *McComas–Lacina Constr. Co.,* 641 N.W.2d at 846 (citing *Trushcheff,* 239 N.W.2d at 134), it is clear in the present case, as it was in *McComas–Lacina Construction,* that the only indemnity claim properly at issue is *indemnity for Woods's negligence.*

Under these circumstances, as in *McComas–Lacina Construction, Trushcheff* is not dispositive—and, the court believes, *McComas–Lacina Construction* makes clear that *Trushcheff* cannot be read to bar an indemnity claim for the *indemnitor's* negligence if the indemnity agreement does not clearly and unequivocally provide for indemnity for the *indemnitee's* negligence. The question, therefore, becomes the same as the question presented in *McComas–Lacina Construction:* "[W]hether there [i]s a genuine issue of material fact regarding whether [the general contractor, Dover,] suffered any loss as a result of [the subcontractor/employer's, Woods's,] negligence." *Id.* Also as in *McComas–Lacina Construction,* there are, indeed, genuine issues of material fact as to Woods's negligence in this case. In its resistance to Woods's motion for summary judgment, Dover has designated substantial record evidence, including apparent admissions from Woods's president, that Woods did not brace the wall, as Woods was required to do by both the plans and specifications for the construction project and by OSHA regulations, leading to the collapse of that wall and Eischeid's injuries. *See* FED. R. CIV. P. 56(e) (the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts

showing that there is a genuine issue for trial"); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

In short, as in *McComas–Lacina Construction,* Woods's motion for summary judgment on Dover's indemnity claim must be denied: The Subcontract Agreement provides for indemnity for Woods's negligence and Woods's negligence may have been the proximate cause of Eischeid's injuries. *See McComas–Lacina Constr. Co.,* 641 N.W.2d at 847 (citing similar circumstances as grounds for denying the subcontractor's motion for summary judgment on the general contractor's indemnity claim). Neither the indemnity provision nor *Trushcheff* bars an indemnity claim based on *Woods's* negligence.[3]

*iv. Procedure to determine extent of indemnity.* The court also agrees with Dover that the unpublished decision of the Iowa Court of Appeals in *Sward v. Nelson Construction, Inc.,* 2003 WL 118206 (Iowa Ct.App. Jan.15, 2003), provides a sensible approach to the question of how and when the extent of Dover's right to indemnity from Woods should be determined, even if there can be no "sharing of fault" between Dover and Woods under the Iowa Comparative Fault Act in the absence of "common liability." In *Sward,* Tri–State, the subcontractor/employer of the injured employee, Sward, argued that the trial court had improperly permitted the jury to assign causal negligence to Tri–State in Sward's suit against the general contractor, Nelson

Construction, in order to determine Tri–State's indemnity to Nelson Construction. *Sward,* 2003 WL 118206 at *5. The Iowa Court of Appeals rejected that argument, as follows:

> Once the district court concluded Nelson could not seek indemnity for injuries caused by its own negligence, it concluded the only reasonable way to determine each parties' liability under the [indemnity] contract was to permit the jury to assign fault to the parties. We agree. A similar procedure was employed by the district court in *Martin & Pitz. Martin & Pitz [Assocs., Inc. v. Hudson Constr.],* 602 N.W.2d [805,] 807 [(Iowa 1999)]. In the present case it is clear that Nelson was or should have been aware of the dangerous condition. It is also clear that Sward was aware of the condition but did nothing to inform either Tri–State or Nelson. Although Tri–State did not have specific knowledge of the safety violations, its president admitted that it was responsible to inspect all construction sites and fix any dangerous work conditions pursuant to OSHA regulations. The question was therefore to what extent did each party contribute toward Sward's injuries. The appropriate method of determining the percentage of fault was to assign that question to the jury. We find no error here.

*Sward,* 2003 WL 118206 at *5; *see also Martin & Pitz Assocs., Inc. v. Hudson*

---

**3.** The court finds it unnecessary, under the circumstances, to consider whether Dover may also assert an "implied" indemnity claim based on alleged failure of Woods to satisfy the contractual obligations to perform work in compliance with the plans and specifications for the project and OSHA regulations. Woods did not put that question at issue in its motion for summary judgment, because Woods asserted only that the absence of an express contract provision providing indemnity for *Dover's* negligence stood as a com-

plete bar to *any* indemnity claim. Assuming, *arguendo,* that it may be necessary to consider the question, the court finds that Dover has more than adequately demonstrated that there are genuine issues of material fact as to whether or not an implied duty of indemnity arose from the contractual provisions requiring Woods to comply with the plans and specifications for the project and OSHA regulations, and that Woods breached those contractual obligations giving rise to a right to indemnity on Dover's part.

*Constr. Servs., Inc.,* 602 N.W.2d 805, 806 (Iowa 1999) ("After the initial suit [between an injured employee of the subcontractor and the architect for the construction project] was settled, the architects, who were looking to recoup their expenses of settlement, pressed for resolution of their indemnity claims. The district court, concluding that an allocation of fault was essential to resolving the indemnity issues [among the architect, the general contractor, and the subcontractor], submitted the question to a jury. The jury found Pugh [the injured employee] was 100% at fault. The court then resolved the indemnification issue."). This court will use a similar procedure ·in this case to determine the extent of Woods's indemnity, if any, to Dover for *Woods's* negligence, because this court has likewise determined that Dover cannot seek indemnity for injuries to Eischeid that were caused by Dover's own negligence.

### IV. DELOSS'S MOTION FOR SUMMARY JUDGMENT

Finally, the court turns to DeLoss's motion for summary judgment on Woods's third-party complaint against DeLoss. In its third-party complaint, Woods alleges that DeLoss's negligence caused all or part of Eischeid's damages. However, DeLoss has moved for summary judgment on that claim.

#### A. Pertinent Factual Background

In addition to the facts presented above, DeLoss and/or Woods contend that the following facts are pertinent to DeLoss's motion for summary judgment on Woods's third-party claim.[4] DeLoss was originally a subcontractor on the construction project at issue with regard to the foundation, flooring, and sidewalks. However, appar-

ently because the project was running behind schedule, Dover contracted with DeLoss to do grouting of walls while Woods continued laying blocks. On March 16, 1999, Barry DeLoss, the principal of DeLoss construction, blamed Woods employees for running over some of DeLoss's plywood, and as a consequence, he refused to do any more grouting. Woods contends that, if DeLoss had continued grouting on March 16, 1999, the wall that collapsed the next day would have been grouted and braced by the end of the day on March 16. Because it was not grouted, however, it was not braced, and because it was not braced, it collapsed on March 17, 1999, under the pressure of a gust of wind. In fact, Woods contends, the portion of the wall that collapsed, allegedly causing Mr. Eischeid's injuries, was an ungrouted portion of the wall. On the other hand, DeLoss points out that Woods's president, John Derek Woods, testified in his deposition that DeLoss and its employees did nothing wrong and did nothing that caused the collapse of the wall on March 17, 1999.

#### B. Arguments Of The Parties

DeLoss has moved for summary judgment on the ground that there is no genuine issue of material fact that it was *not* negligent, in light of deposition testimony by Woods's president, John Derek Woods, that DeLoss Construction, Inc., and its employees were in no way at fault and did nothing to cause the collapse of the wall on March 17, 2003. DeLoss contends that "[t]here can be no more clear lack of factual controversy than the proponent of the third-party action admitting there is no fault by the party it sued." DeLoss's Memorandum Of Authorities In Support Of Its Motion For Summary Judgment, 2.

---

**4.** Again, the court will not attempt here a comprehensive review of the undisputed and disputed facts in the record. Rather, the court will present here only sufficient factual background to put in context the parties' arguments for and against summary judgment on Woods's claim against DeLoss.

In response, Woods argues that Mr. Woods's conclusory statement of opinion does not provide the proper basis for summary judgment, *i.e.,* does not establish that the pertinent facts are undisputed. Woods contends that Mr. Woods's statement must be considered in context with his opinion that the collapse of the wall was caused by a concentrated gust of wind, but that opinion does not rise to the level of undisputed fact. Moreover, Woods argues that Mr. Woods's inability to articulate in what way DeLoss or its employees did anything wrong does not establish that the facts are undisputed, because Mr. Woods lacks the legal expertise to assess whether or not a party's conduct is a legal cause of injuries to another. Instead, Woods contends that a fact finder could conclude that DeLoss's conduct in refusing to grout walls on March 16, 1999, which meant that the wall that collapsed was not properly braced by the end of that day, was a proximate cause of the collapse of the wall on March 17, 1999. Even if Mr. Woods's opinion that DeLoss did nothing wrong is a "fact," it must be viewed in the context of other facts in the record suggesting that DeLoss's refusal to grout the remainder of the unfinished wall on March 16, 1999, caused that wall not to be properly braced and, further, caused an ungrouted, unbraced portion of the wall to collapse on March 17, 1999, injuring Mr. Eischeid.

### C. Analysis

The court has found few cases considering a comparable question of the effect of apparent admissions of the claimant's principal or agent that the party against whom a claim is made has done nothing wrong. One such case, however, is *Credit General Ins. Co. v. Midwest Indemnity Corp.,* 916 F.Supp. 766 (N.D.Ill. 1996), in which the defendant contended that statements of opinion made by the plaintiff corporation's agents that the defendant had "done a good job" were admissions that defendant did not breach a duty to the plaintiff. *Credit General,* 916 F.Supp. at 777. The court ruled that these statements did not entitle the defendant to summary judgment, because, while the agents' opinion may have been evidence of the lack of a breach of contract, it was not conclusive on that issue. The court explained that "a declaration by an officer or agent is generally only admissible if it is one of fact rather than a statement of opinion," citing *Lasiter v. Washington Nat. Ins. Co.,* 412 F.2d 594, 597 (5th Cir. 1969). *Credit General,* 916 F.Supp. at 777. In turn, in *Lasiter,* the court relied on the Texas rule that a declaration of an officer or agent of a corporation regarding matters under his charge is admissible as an admission against the corporation, limited by the rule "that a declaration by a party is admissible only if it is one of fact. A mere statement of opinion . . . is not admissible." *Lasiter,* 412 F.2d at 597. This court likewise finds that Mr. Woods's deposition testimony is, perhaps, supportive of DeLoss's contention that it did nothing wrong, but it is, at best, a lay *opinion, see* FED. R. EVID. 701; it simply does not rise to the level of an undisputed fact. Certainly, that evidence, even if it is a statement of fact rather than opinion, must be considered by a finder of fact in light of contrary evidence, offered by Woods, *see* FED. R. CIV. P. 56(e) (the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial"); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548, suggesting that DeLoss's conduct in refusing to grout the remainder of the wall under construction on March 16, 1999, was a proximate cause of the wall collapsing on March 17, 1999. DeLoss is not entitled to summary judgment simply on the strength of Mr. Woods's purported admissions that

DeLoss did nothing wrong, and DeLoss's motion for summary judgment will, therefore, be denied.

### V. CONCLUSION

Upon the foregoing,

1. That portion of defendant Woods's March 25, 2003, motion for summary judgment (docket no. 83) pertaining to the "direct" negligence claim by plaintiff Eischeid against defendant Woods is **granted.** Eischeid's "direct" negligence claim against Woods is dismissed.

2. That portion of third-party defendant Woods's March 25, 2003, motion for summary judgment (docket no. 83) pertaining to third-party claims by defendant and third-party plaintiff Dover against Woods is **granted in part and denied in part,** as follows:

a. That portion of Woods's motion seeking summary judgment on Dover's claims of negligence and for contribution is **granted.** Those claims in Dover's third-party complaint are dismissed.

b. That portion of Woods's motion seeking summary judgment on Dover's claim of breach of contract pertaining to breach of a contractual duty to procure workers' compensation insurance is also **granted,** and that portion of the breach-of-contract claim is also dismissed on the ground that Dover has withdrawn the claim. However, those portions of Dover's breach-of-contract claim pertaining to breaches of contractual duties to comply with the plans and specifications for the construction project and to comply with OSHA regulations are not properly in dispute on Woods's motion for summary judgment, or if they are, Woods's motion for summary judgment as to those portions of the breach-of-contract claim is **denied,** on the ground that those claims are subject to genuine issues of material fact.

c. That portion of Woods's motion seeking summary judgment on Dover's claim for indemnity is also **granted in part and denied in part,** as follows:

i. Woods's motion is **granted** as to any claim by Dover for indemnity for *Dover's* negligence, but

ii. Woods's motion is **denied** as to any claim by Dover for indemnity for *Woods's* negligence.

3. Third-party defendant DeLoss's April 25, 2003, motion for summary judgment on Woods's third-party complaint (docket no. 91) is **denied in its entirety.**

**IT IS SO ORDERED.**